

**null / ALL**
**Transmittal Number: 26253226**
**Date Processed: 01/23/2023**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Legal Department<br>American Family Mutual Insurance<br>6000 American Pkwy<br>Madison, WI 53783-0001 |
| **Electronic copy provided to:** | Halley Walton<br>Lauren Johnson (MIC)<br>Shauna Pike |

| | |
|---|---|
| **Entity:** | Midvale Indemnity Company<br>Entity ID Number  2031490 |
| **Entity Served:** | Midvale Indemnity Company |
| **Title of Action:** | International Institute Of Aesthetic Arts & Beauty, LLC vs. Midvale Indemnity Company |
| **Matter Name/ID:** | International Institute Of Aesthetic Arts & Beauty, LLC vs. Midvale Indemnity Company (13512064) |
| **Document(s) Type:** | Citation/Petition |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Collin County Court, TX |
| **Case/Reference No:** | 006-0090-2023 |
| **Jurisdiction Served:** | Texas |
| **Date Served on CSC:** | 01/23/2023 |
| **Answer or Appearance Due:** | 10:00 A.M. Monday next following the expiration of 20 days after service |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | The Cedrick D. Forrest Law Firm<br>832-945-1900 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882  |  sop@cscglobal.com

Exhibit B

**THE STATE OF TEXAS**
**COUNTY OF COLLIN**

**CITATION**
**006-00090-2023**

**TO:    Midvale Indemnity Company**
**Registered Agent for Service Listed With The**
**Texas Dept of Insurance Corporation Service Company**
**211 E 7th St Ste 620**
**Austin TX 78701-3218**

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney does not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."

**GREETINGS:**
You are commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION** on or before 10:00 a.m. of the Monday next after the expiration of twenty (20) days after the date of service hereof, before the Honorable Jay Bender in the County Court at Law 6, of Collin County at the Courthouse in McKinney, Texas.

Said **PLAINTIFF'S ORIGINAL PETITION** was filed on this the 12th day of January, 2023. A copy of said document accompanies this citation.

**REQUESTED BY:**    Cedrick Forrest
The Cedrick D Forrest Law Firm
100 Glenborough Dr Suite 422
Houston TX 77060

The file number of said suit being: 006-00090-2023

**INTERNATIONAL INSTITUTE OF AESTHETIC ARTS & BEAUTY, LLC  V.**
**MIDVALE INDEMNITY COMPANY GALLAGHER BASSETT SERVICES, INC.**

GIVEN UNDER MY HAND AND SEAL OF SAID COURT, at office in Collin County, McKinney, Texas, on this the 19th day of January, 2023.

**ATTEST: STACEY KEMP, COUNTY CLERK**
Collin County, Texas
2100 Bloomdale Road, Suite 12165
McKinney, Texas 75071
972-548-6423, METRO 972-424-1460 EXT. 6423

Signed: 1/19/2023 2:30:45 PM

Issued By: *Danyelle Turner*                    ,Deputy
Danyelle Turner

Exhibit B

**THE STATE OF TEXAS**
**COUNTY OF COLLIN**

# Officer's Return
### STACEY KEMP, COUNTY CLERK

#### -CITATION-
**006-00090-2023**
**INTERNATIONAL INSTITUTE OF AESTHETIC ARTS & BEAUTY, LLC  V.  MIDVALE INDEMNITY COMPANY GALLAGHER BASSETT SERVICES, INC.**

Came to hand on the _____ day of _____, 20\_\_\_, _____o'clock
\_\_\_\_.m., and executed in _____ County, Texas, by delivering to within
Respondent, to Wit:
Name:_____
At_____ o'clock \_\_\_\_.m., on _____day of _____,
20\_\_\_\_.
Address:_____

Each in person, a true copy of this citation with a true and correct copy of the petition
attached thereto having first endorsed on such copy of said citation the date of delivery.

The distance actually traveled by me in serving such process was _____
miles, and my fees are as follows:

      For Serving this citation…………………………………..$_____
      For Mileage…………………………………………..$_____
      TOTAL FEES……………………………………..$_____

To certify which witness my hand officially
Sheriff_____
Of_____County, Texas
By_____Deputy, Authorized Person

Before me, the undersigned authority, personally appeared _____
who on oath said:
      "I affirm that I am the person serving process in this case and that the contents of
the foregoing are true and correct."

_____
                           Affiant

Sworn to and signed before me, the undersigned authority, this _____ day of
_____, 20\_\_\_\_.
Seal

_____
              Notary Public or Other Officer

Exhibit B

Electronically Filed 1/12/2023 12:38 PM
Stacey Kemp County Clerk
Collin County, Texas
By: Bennetta Hughes, Deputy
Envelope ID: 71741188

CAUSE NO._____   006-00090-2023

| | | |
|---|---|---|
| International Institute of | § | IN THE COUNTY COURT |
| Aesthetic Arts & Beauty, LLC | § | |
| *Plaintiff,* | § | |
| | § | OF |
| v. | § | |
| | § | |
| Midvale Indemnity Company | § | |
| Gallagher Bassett Services, Inc. | § | |
| *Defendants.* | § | COLLIN COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiff, International Institute of Aesthetic Arts & Beauty, LLC., hereinafter referred to by name or as "Plaintiff," and files this Original Petition against defendant Midvale Indemnity Company hereinafter referred by name or as "Defendant," and for cause of action would respectfully show unto the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.     Plaintiff intends for discovery to be conducted under Level 2 of Rule 190 of the TEXAS RULES OF CIVIL PROCEDURE.

### II.
### PARTIES

2.     Plaintiff is an individual residing in Collin County County, Texas.

3.     Defendant Gallagher Bassett Service, Inc. is a corporation organized under the laws of the State of Texas and may be served process through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

---

PLAINTIFF'S ORIGINAL PETITON                                                                 1

**Exhibit B**

4.      Defendant, Midvale Indemnity Company is engaged in the business of insurance in the State of Texas. Midvale Indemnity Company may be served through its registered agent for service listed with the Texas Department of Insurance: Corporation Service Company  211 E 7th St Ste 620  Austin, TX 78701-3218. **Issuance of citation is hereby requested**.

### IV.
### JURISDICTION

5.      This Court has subject matter jurisdiction of this cause of action because it involves an amount in controversy within the jurisdictional limits of this Court.

6.      This case is not removable to federal court because no federal interest exists. *See* 28 U.S.C. § 1447(c). Consequently, removal would have no basis in law or fact, and an improper removal would subject Defendants to an award of costs, expenses, and fees, including but limited to, attorneys' fees under 28 U.S.C. § 1447 (c).

7.      This Court has personal jurisdiction over defendant Midvale Indemnity Company because it engages in the business of insurance in the State of Texas and Plaintiff's causes of action arise out of and is related to Defendant's business activities in the State of Texas. This Court otherwise has personal jurisdiction over Defendant Midvale Indemnity Company because it conducts substantial amounts of business in Texas, has purposefully availed itself of the rights, benefits, and obligations of conducting business in Texas, have continuous, systematic contacts with Texas, and are otherwise at home in Texas.

8.      In accordance with Rule 47 of the Texas Rules of Civil Procedure, Pursuant to Rule 47 CPRC, Plaintiff seeks monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs.

### V.
### VENUE

PLAINTIFF'S ORIGINAL PETITON                                                                                  2

Exhibit B

9.      Venue is proper in Collin County County because all or a substantial part of the events giving rise to the lawsuit occurred in Collin County County, and the policyholder instituting the suit resided in Collin CountyCounty, Texas at the time the cause of action accrued. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1); TEX. CIV. PRAC. & REM. CODE § 15.032.

## VI.
## AGENCY AND RESPONDEAT SUPERIOR

10.     Whenever in this Petition it is alleged that Defendants did any act or thing, it is meant that Defendants or their agents, officers, servants, employees, or representatives did such a thing. It was also done with full authorization or ratification of the Defendant or done in the normal routine, course and scope of the agency or employment of the Defendant or its agents, officers, servants, employees, or representatives.

## VII.
## CONDITIONS PRECEDENT

11.     All conditions precedent to recovery have been performed, waived, or have occurred.

## VIII.
## FACTUAL BACKGROUND

12.     Plaintiff, International Institute of Aesthetic Arts & Beauty, LLC., is the owner of a Midvale Indemnity Company Policy number BPP1092982, issued by Defendant, Midvale Indemnity Company (the "Policy"). *Exhibit A*

13.     Plaintiff, International Institute of Aesthetic Arts & Beauty, LLC. owns the insured business personal property, which is specifically located at 1022 South Greenville Avenue, Allen, TX 75002 (the "Property").

14.     Midvale Indemnity Company, or its agent(s), sold the Policy, insuring and covering the Property against damages from theft to Plaintiff.

Exhibit B

15.     On or about October 22, 2021, Plaintiff experienced a theft resulting in loss of covered business personal property which was promptly reported to police authorities.

16.     Plaintiff timely submitted a claim to Midvale Indemnity Company. Midvale Indemnity Company assigned claim number 005097-016384-RC-01 to Plaintiff's claim. Midvale Indemnity Company assigned Gallagher Bassett Claims Services, Inc. to adjust the claim. However, Midvale Indemnity Company, through its agent Gallagher Bassett Claims Services, Inc. has refused to cover the loss.

17.     To date, Defendants have improperly denied the claim by applying erroneous interpretation of policy provisions solely to deny Plaintiff coverage under the Policy. Specifically, Defendants stated in its most recent July 21, 2022 reservation of rights letter denying coverage that Plaintiff's claims were denied because the following provisions of the Policy excluded coverage: ***Exhibit B***

SECTION I – PROPERTY
A. Coverage
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
4. Limitations
(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)
C. Concealment, Misrepresentation Or Fraud
This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:
1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

18.     Despite Plaintiff filing a police report with the Allen Police Department, providing photographs to Defendant showing item in disarray indicating a break-in, informing Defendants of witnesses of the potential suspects, and emails of the building owner confirming a break-in at the property; Defendants continue to deny Plaintiff's insurance claim.

Exhibit B

19.    Further, the adjusters Defendant Gallagher Bassett Claims Services, Inc. has assigned on the claim have conducted a substandard investigation and inspection of the property and prepared a report that failed to include all the losses that were observed or reported during the investigation.

20.    The adjusters' unreasonable investigation led to the baseless denial of Plaintiff's claim.

21.    Moreover, Midvale Indemnity Company through Gallagher Bassett Claims Services, Inc. has performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the property.

## IX.
## CAUSES OF ACTION AND REQUEST FOR DECLARATORY RELIEF

22.    Each of the foregoing paragraphs is incorporated by reference in the following:

23.    Pursuant to Texas Civil Practice and Remedies Code section 37.004, Plaintiff requests a declaration of the rights of the parties with regard to the written Insurance Policy. Specifically, Plaintiffs request a declaration that physical evidence does exist in the form of photographs, police reports, and witness statement to show what happened to the property being claimed by Plaintiff and that the following provision of the Policy does not apply to Plaintiff's claim; SECTION I-PROPERTY(A)(4):

> **SECTION I – PROPERTY**
>
> **A.  Coverage**
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
>> 4. Limitations
>>     (3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

24.    Further, Plaintiff seeks a declaration that Plaintiff's actions in reporting the claim has not voided the Policy as alleged by Defendants as there is no evidence of concealment, misrepresentation, or fraud:

---

Exhibit B

SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY
AND SECTION II – LIABILITY)

**C. Concealment, Misrepresentation Or Fraud**
This policy is void in any case of fraud by you as it relates to this policy at any time. It
is also void if you or any other insured, at any time, intentionally conceals or
misrepresents a material fact concerning:
    1. This policy;
    2. The Covered Property;
    3. Your interest in the Covered Property; or
    4. A claim under this policy.

## A.    BREACH OF CONTRACT

25.    At the time of the loss, Plaintiff had a valid, enforceable insurance contract in place, issued by Defendant. Plaintiff was the insured of the contract. Plaintiff fully performed its contractual obligations as required by the insurance contract, and at all times complied fully with all material provisions of the Policy.

26.    According to the Policy that Plaintiff purchased, Defendant Midvale Indemnity Company had the duty to investigate and pay Plaintiff's policy benefits for claims made for covered damages, including additional benefits under the Policy, resulting from the damages. As a result of these damages, which result from covered perils under the Policy, the Plaintiff's home has been damaged.

27.    Defendant Midvale Indemnity Company's failure to properly investigate, and refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question and under the laws of the State of Texas, constitutes a material breach of Defendant Midvale Indemnity Company's contract with Plaintiff. As a result of this breach of contract, Plaintiff has suffered the damages that are described in this Petition, the producing cause of which is Defendant's actions.

## B.    PROMPT PAYMENT OF CLAIMS; VIOLATIONS OF TEXAS INSURANCE CODE § 542, ET. SEQ

---

Exhibit B

28.     The failure of Midvale Indemnity Company to pay for the losses and/or follow the statutory time guidelines for accepting or denying coverage constitutes a violation of 542.051 *et seq.* of the Texas Insurance Code.

29.     All of the above-described acts, omissions, and failures of Defendant are a producing cause of Plaintiff's damages that are described in this Petition. Defendant Midvale Indemnity Company is therefore liable under Chapter 542 for penalty interest at the rate set forth in the statute, and attorney's fees taxed as costs of this suit.

30.     Additionally, if it is determined that Defendant Midvale Indemnity Company owes Plaintiff any additional money on Plaintiff's claim, the Defendant has automatically violated Chapter 542 in this case.

## C.     UNFAIR INSURANCE PRACTICES; VIOLATION OF TEXAS INSURANCE CODE § 541, ET. SEQ.

31.     As an insurer, Defendant Midvale Indemnity Company owes statutory duties to Plaintiff as its insured. Specifically, the Texas Insurance Code prohibits Defendant Midvale Indemnity Company from engaging in any unfair or deceptive act or practice in the business of insurance.

32.     By its acts, omissions, failures, and conduct, Defendant Midvale Indemnity Company has engaged in unfair and deceptive acts or practices in the business of insurance in violation of 541 of the Texas Insurance Code. Such violations include, without limitation, all conduct described in this Petition, plus Defendant's unreasonable delays and under-scoping in the investigation, adjustment, and resolution of Plaintiff's claim, plus Defendant's failure to pay for the proper repair of the Plaintiff's home on which liability had become reasonably clear. They further include Defendant's failure to give Plaintiff the benefit of the doubt. Specifically:

     a.     Defendant violated § 541.051 of the Texas Insurance Code by:

Exhibit B

      i.       Making statements misrepresenting the terms and/or benefits of the policy.

b.    Defendant violated § 541.060 by:

      i.       Misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

      ii.     failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

      iii.    failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

      iv.    failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff of submit a reservation of rights to Plaintiff; and

      v.     refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

c.    Defendant violated § 541.061 by:

      i.       making an untrue statement of material fact;

      ii.     failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

      iii.    making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

      iv.    making a material misstatement of law; and

      v.     failing to disclose a matter required by law to be disclosed.

---

Exhibit B

33.    Defendant's violations of Chapter 541 of the Texas Insurance Code enumerated above caused damages to Plaintiff in at least the amount of the Policy benefits wrongfully withheld.

34.    Moreover, Defendant Gallagher Bassett Claims Services, Inc. is liable for damages under §541.060 Tex. Ins. Code.

## X.
## ATTORNEYS' FEES

35.    Plaintiff engaged the undersigned attorney(s) to prosecute this lawsuit against Defendant and Plaintiff agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

36.    Plaintiff is entitled to costs and reasonable and necessary attorney's fees pursuant to Texas Civil Practices and Remedies Code §37.009.

37.    Additionally, Plaintiff is entitled to reasonable and necessary attorney's fees incurred in prosecuting its cause of action through trial and any appeal pursuant to §§ 541.152 and 542.060 Tex. Ins. Code.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, International Institute of Aesthetic Arts & Beauty, LLC. prays that Defendants, Midvale Indemnity Company and Gallagher Bassett Claims Services, Inc. be cited to appear and answer herein, and that upon trial hereof, said Plaintiff have and recover such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, as to economic damages, actual damages, consequential damages, and statutory penalty interest. In addition, Plaintiff requests the award of attorneys' fees for the prosecution of this case, the trial, and any appeal of this case, for all costs of court, for prejudgment and post-judgment interest, at the highest rate allowed by law, and for any other and further relief, at law or in equity, to which Plaintiff may show itself to be justly entitled.

---

PLAINTIFF'S ORIGINAL PETITON                                                                 9

**Exhibit B**

Respectfully Submitted,

**THE CEDRICK D. FORREST LAW FIRM**

By:_____
Cedrick D. Forrest
Texas Bar No.: 24100188
service@cdforrestlaw.com
100 Glenborough Dr., Suite 422
Houston, Texas 77060
Phone: (832) 945-1900
Facsimile: (713) 583-1202
**ATTORNEYS FOR PLAINTIFF**

Exhibit B

**PROGRESSIVE** SMALL BUSINESS / by **Homesite**

PO Box 5316
Binghamton, NY  13902

ASHLEY BONDS
INTERNATIONAL INSTITUTE OF AESTHETIC ARTS &
BEAUTY LLC
1022 SOUTH GREENVILLE AVENUE
ALLEN, TX 75002

**Progressive Advantage Business Program**
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company
Tel: 844-306-4926

**Policy Number:** BPP1092982
**Date:** 07/30/2021

Dear ASHLEY BONDS,

Progressive Advantage Business Program is pleased to be of service to you.  Our objective is to provide you with comprehensive and professional products for all of your insurance needs.

Please find the enclosed policy documents.

If you have any questions, please contact your agent or our Service Center at 844-306-4926.

Sincerely,

Customer Care Department

Policies are underwritten and issued by member companies and affiliates of Homesite Group Incorporated. Policies are underwritten by Midvale Indemnity Company (California Certificate of Authority Number 2224-4).

BID COVL 0001 12 17

**Exhibit B**

**PROGRESSIVE** SMALL BUSINESS / by **Homesite**

Progressive Advantage Business Program
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company

**Send policy correspondence to:**
PO Box 5316
Binghamton, NY 13902
844-306-4926

Information as of: 07/01/2021

# POLICY DECLARATIONS

This document and your policy contract define our insuring agreement. In return for payment of premium and subject to all the terms of this policy, we agree to provide you insurance as stated in the policy.

## Policy Information

| | | | |
|---|---|---|---|
| **Named Insured:** | INTERNATIONAL INSTITUTE OF AESTHETIC ARTS & BEAUTY LLC | **Policy Number:** | BPP1092982 |
| **E-mail Address:** | glammeupgiro@aol.com | **Policy Type:** | Business Owner's Policy (BOP) |
| **Phone:** | (469) 615-8993 | **Policy Period:** | 07/01/2021 to 07/01/2022  12:01AM Standard Time at Primary Location |

## Location Information

**Location #1** (primary location)

**Address:**          1022 SOUTH GREENVILLE AVENUE
                      ALLEN, TX 75002

**Coverage Information** (applies to all buildings at Location #1 )
**Business Personal Property Limit:**                    $50,000

**Deductible** (applies per location, per occurrence):   $500
**Windstorm or Hail Percentage Deductible** (applies
per location, per occurrence):                           Not Applicable

## Policy Coverage (limits & deductibles shown are non-stackable across locations)

| | Limit of Insurance | Deductible |
|---|---|---|
| *Liability Coverage* | | |
| **Business Liability** (per-occurrence limit/annual aggregate limit): | $1,000,000/$2,000,000 | None |
| **Damage to Premises Rented to You** | $50,000 | None |
| **Medical Expenses** (per person) | $5,000 | None |
| *Property Coverage* | | |
| **Business Income & Extra Expense** | 12 months actual loss sustained | None |
| **Personal Property Off-Premises** | $10,000 | $500 |
| **Business Income from Dependent Properties** | $5,000 | None |
| **Business Income - Payroll Expense** | 60 days | None |
| **Business Income - Extended Period of Indemnity** | 60 days | None |

*Other Coverage*

BID BP 1001 07 17



Page 1 of 3

| | | |
|---|---|---|
| Accounts Receivable (on-premises/off-premises) | $10,000/$5,000 | $500 |
| Valuable Papers & Records (on-premises/off-premises) | $10,000/$5,000 | $500 |
| Electronic Data | $10,000 | $500 |
| Interruption of Computer Operations | $10,000 | $500 |
| Fire Department Service Charge | $10,000 | None |
| Forgery or Alteration | $5,000 | $500 |
| Employee Dishonesty | $5,000 | $500 |
| Equipment Breakdown Coverage | See policy form | See policy form |
| Cyber Suite Without Business Income | See policy form | See policy form |

| **Policy Premium** | **$638** |
|---|---|

## Premium Taxes, Surcharges and Fees (note: included in Policy Premium above)

Cyber Claim Support and Risk Management Fee                         $7.00

## Discounts Applied to This Policy:

Loss-Free
Responsible Shopper

## Policy Forms and Endorsements

BP_00_03_07_13  BUSINESSOWNERS COVERAGE FORM
BP_01_18_11_14  TEXAS CHANGES
BP_02_04_01_06  TEXAS CHANGES - AMENDMENT OF CANCELLATION PROVISIONS OR COVERAGE CHANGE
BP_04_17_01_10  EMPLOYMENT-RELATED PRACTICES EXCLUSION
BP_04_48_07_13  ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION
BP_04_83_01_10  REMOVAL OF INSURANCE-TO-VALUE-PROVISION
BP_05_01_07_02  CALCULATION OF PREMIUM
BP_05_15_01_15  DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT
BP_05_17_01_06  EXCLUSION - SILICA OR SILICA-RELATED DUST
BP_05_23_01_15  CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
BP_05_77_01_06  FUNGI OR BACTERIA EXCLUSION (LIABILITY)
BP_12_03_01_10  LOSS PAYABLE CLAUSES
BP_15_04_05_14  EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION
BP_77_01_07_16  EQUIPMENT BREAKDOWN COVERAGE
BP_77_93_07_16  TEXAS CHANGES - EQUIPMENT BREAKDOWN
BP_IN_01_07_13  BUSINESSOWNERS COVERAGE FORM INDEX
CYB_00_01_06_19  CYBER COVERAGE INSURANCE
CYB_TX_77_00_06_19  TEXAS CHANGES
IL_N_001_09_03  FRAUD STATEMENT
IL_N_102_09_19  TEXAS FLOOD INSURANCE DISCLOSURE NOTICE
IL_N_178_03_13  TEXAS PERIOD TO FILE A CLAIM OR BRING LEGAL ACTION AGAINST US NOTICE - WINDSTORM OR HAIL - CATASTROPHE AREA



In witness whereof, we have caused this policy to be signed by our authorized officers.

**Home Office**
**MIDVALE INDEMNITY COMPANY**
**6000 American Parkway**
**Madison, WI  53783**


Andrew A. McElwee, Jr.
President

David Holman
Secretary

Exhibit B

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
07/30/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Progressive Advantage Business Program |
|---|---|
| Progressive Advantage Business Program<br>PO Box 5316<br>Binghamton, NY 13902 | PHONE (A/C, No, Ext): 844-306-4926 — FAX (A/C, No): |
| | E-MAIL ADDRESS: commercialservice@homesite.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A : Midvale Indemnity Company | 27138 |
| **INSURED**<br>INTERNATIONAL INSTITUTE OF AESTHETIC ARTS & BEAUTY LLC<br>1022 SOUTH GREENVILLE AVENUE<br>ALLEN TX 75002 | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES    CERTIFICATE NUMBER: 252569202843566    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY**<br>CLAIMS-MADE [X] OCCUR | N | N | BPP1092982 | 07/01/2021 | 07/01/2022 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[X] POLICY [ ] PRO-JECT [ ] LOC<br>OTHER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | **AUTOMOBILE LIABILITY**<br>ANY AUTO<br>OWNED AUTOS ONLY / SCHEDULED AUTOS<br>HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | | | | | COMBINED SINGLE LIMIT (Ea accident) | |
| | | | | | | | BODILY INJURY (Per person) | |
| | | | | | | | BODILY INJURY (Per accident) | |
| | | | | | | | PROPERTY DAMAGE (Per accident) | |
| | UMBRELLA LIAB OCCUR<br>EXCESS LIAB CLAIMS-MADE<br>DED RETENTION $ | | | | | | | EACH OCCURRENCE | |
| | | | | | | | AGGREGATE | |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [N/A]<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | | PER STATUTE / OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | |
| | **PROFESSIONAL LIABILITY** | | | | | | OCCURRENCE<br>AGGREGATE | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Cosmetology School

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| INTERNATIONAL INSTITUTE OF AESTHETIC ARTS & BEAUTY LLC | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.



ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
07/30/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Progressive Advantage Business Program | | |
|---|---|---|---|
| Progressive Advantage Business Program<br>PO Box 5316<br>Binghamton, NY 13902 | PHONE (A/C, No, Ext): 844-306-4926 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: commercialservice@homesite.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Midvale Indemnity Company | | 27138 |
| INSURED<br>INTERNATIONAL INSTITUTE OF AESTHETIC ARTS & BEAUTY LLC<br>1022 SOUTH GREENVILLE AVENUE<br>ALLEN TX 75002 | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES    CERTIFICATE NUMBER: 2525692039300    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY**<br>☐ CLAIMS-MADE  ☒ OCCUR | N | N | BPP1092982 | 07/01/2021 | 07/01/2022 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☒ POLICY  ☐ PRO-JECT  ☐ LOC<br>OTHER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | |
| | | | | | | | BODILY INJURY (Per person) | |
| | | | | | | | BODILY INJURY (Per accident) | |
| | | | | | | | PROPERTY DAMAGE (Per accident) | |
| | ☐ UMBRELLA LIAB  ☐ OCCUR<br>☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | EACH OCCURRENCE | |
| | ☐ DED  ☐ RETENTION $ | | | | | | AGGREGATE | |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ PER STATUTE  ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | |
| | **PROFESSIONAL LIABILITY** | | | | | | OCCURRENCE AGGREGATE | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Cosmetology School

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| TIME PAYMENT<br><br>1600 DISTRICT AVE #200<br>BURLINGTON MA 01803 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.



ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 07/30/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Progressive Advantage Business Program | | |
|---|---|---|---|---|
| Progressive Advantage Business Program PO Box 5316 Binghamton, NY 13902 | PHONE (A/C, No, Ext): 844-306-4926 | | FAX (A/C, No): | |
| | E-MAIL ADDRESS: commercialservice@homesite.com | | | |
| | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | INSURER A : Midvale Indemnity Company | | | 27138 |
| INSURED INTERNATIONAL INSTITUTE OF AESTHETIC ARTS & BEAUTY LLC 1022 SOUTH GREENVILLE AVENUE ALLEN TX 75002 | INSURER B : | | | |
| | INSURER C : | | | |
| | INSURER D : | | | |
| | INSURER E : | | | |
| | INSURER F : | | | |

## COVERAGES    CERTIFICATE NUMBER: 2525692010281784    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** CLAIMS-MADE [X] OCCUR | Y | N | BPP1092982 | 07/01/2021 | 07/01/2022 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | $50,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY [ ] PRO-JECT [ ] LOC OTHER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | **AUTOMOBILE LIABILITY** ANY AUTO OWNED AUTOS ONLY SCHEDULED AUTOS HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | |
| | | | | | | | BODILY INJURY (Per person) | |
| | | | | | | | BODILY INJURY (Per accident) | |
| | | | | | | | PROPERTY DAMAGE (Per accident) | |
| | UMBRELLA LIAB OCCUR EXCESS LIAB CLAIMS-MADE DED RETENTION $ | | | | | | EACH OCCURRENCE | |
| | | | | | | | AGGREGATE | |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECU-TIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | [ ] PER STATUTE [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | |
| | **PROFESSIONAL LIABILITY** | | | | | | E.L. DISEASE - POLICY LIMIT OCCURRENCE AGGREGATE | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Cosmetology School

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| VIOLA BLUE RIDGE, LP C/O TIG REAL ESTATE 4350 BELTLANE DR ADDISON TX 75001 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION.  All rights reserved.



ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

IL N 102 09 19

# TEXAS FLOOD INSURANCE DISCLOSURE NOTICE

"Flood Insurance: You may also need to consider the purchase of flood insurance. Your insurance policy does not include coverage for damage resulting from a flood even if hurricane winds and rain caused the flood to occur. Without separate flood insurance coverage, you may have uncovered losses caused by a flood. Please discuss the need to purchase separate flood insurance coverage with your insurance agent or insurance company, or visit www.floodsmart.gov."



© Insurance Services Office, Inc., 2019

# IMPORTANT NOTICE

To obtain information or make a complaint:

Please call Progressive Advantage Business Program:

**844-306-4926**

You may also call Midvale Indemnity Company:

**866-908-0623**

You may call the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints:

**1-800-252-3439**

You may also write the Texas Department of Insurance:

P.O. Box 149104 Austin, TX 78714-9104  Fax: (512) 475-1771
Web: http://www.tdi.texas.gov   E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES**: If you have a dispute concerning your premium or about a claim you should contact Progressive Advantage Business Program. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part or condition of your insurance policy.**



# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

(1) Property you own that is used in your business;

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b)**;

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2)**; and



(5) Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Direct physical loss unless the loss is excluded or limited under Section I – Property.

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(5)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or



Exhibit B

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

(6) Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

(a) Dampness or dryness of atmosphere or of soil supporting the vegetation;

(b) Changes in or extremes of temperature;

(c) Disease;

(d) Frost or hail; or

(e) Rain, snow, ice or sleet.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this policy;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

(a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

Exhibit B

© Insurance Services Office, Inc., 2012

**(b)** Subject to Paragraph **(3)(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

**Example 1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $ 10,500 |
| Additional Amount | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.


© Insurance Services Office, Inc., 2012

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

(1) For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

(2) We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

(a) Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

(d) Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

(i) A cause of loss listed in Paragraph **(2)(a)** or **(2)(b)**;

(ii) One or more of the "specified causes of loss";

(iii) Breakage of building glass;

(iv) Weight of people or personal property; or

(v) Weight of rain that collects on a roof.

(3) This Additional Coverage – Collapse does **not** apply to:

(a) A building or any part of a building that is in danger of falling down or caving in;

(b) A part of a building that is standing, even if it has separated from another part of the building; or

(c) A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;


Exhibit B

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   **(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

   **(b)** The personal property which collapses is inside a building; and

   **(c)** The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

   The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

   **(1) Business Income**

      **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

      With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

      **(i)** The portion of the building which you rent, lease or occupy;

      **(ii)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

      **(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.



© Insurance Services Office, Inc., 2012

BP 00 03 07 13

(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

(c) Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll.

(d) Ordinary payroll expenses:

(i) Means payroll expenses for all your employees except:

i. Officers;

ii. Executives;

iii. Department Managers;

iv. Employees under contract; and

v. Additional Exemptions shown in the Declarations as:

● Job Classifications; or

● Employees.

(ii) Include:

i. Payroll;

ii. Employee benefits, if directly related to payroll;

iii. FICA payments you pay;

iv. Union dues you pay; and

v. Workers' compensation premiums.

(2) **Extended Business Income**

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

i. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

ii. 60 consecutive days after the date determined in Paragraph (a)(i) above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**Exhibit B**

© Insurance Services Office, Inc., 2012

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

Exhibit B

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

### i. Civil Authority

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

### j. Money Orders And "Counterfeit Money"

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

### k. Forgery Or Alteration

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

### l. Increased Cost Of Construction

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.



(3) The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

    (a) You were required to comply with before the loss, even when the building was undamaged; and

    (b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

    (a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

    (b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(6) The most we will pay under this Additional Coverage, for each described building insured under Section I – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

    (a) We will not pay for the Increased Cost of Construction:

        (i) Until the property is actually repaired or replaced, at the same or another premises; and

        (ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

    (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment Property Loss Condition in Section I – Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.



© Insurance Services Office, Inc., 2012

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

(a) Source of materials; or

(b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent property means property owned by others whom you depend on to:

(a) Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

(b) Accept your products or services;

(c) Manufacture your products for delivery to your customers under contract for sale; or

(d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) Secondary dependent property means an entity which is not owned or operated by a dependent property and which:

(a) Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

(b) Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

(i) Water supply services;

(ii) Wastewater removal services;

(iii) Communication supply services; or

(iv) Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

(6) The coverage period for Business Income under this Additional Coverage:

(a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

(b) Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(7) The Business Income coverage period, as stated in Paragraph (6), does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.


Exhibit B

**(8)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

**(2)** The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage — Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**(4)** This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**q. Interruption Of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.


Exhibit B

© Insurance Services Office, Inc., 2012

(2) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

(b) If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

(c) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(4) This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in (3) above has not been exhausted.

(5) Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

Exhibit B

© Insurance Services Office, Inc., 2012

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(7)** This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

**(3)** The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

Exhibit B

© Insurance Services Office, Inc., 2012

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

## 6. Coverage Extensions

In addition to the Limits of Insurance of Section I – Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.



## c. Outdoor Property

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

## d. Personal Effects

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

## e. Valuable Papers And Records

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit Of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I –** Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

Exhibit B

(d) Paragraph **B.2.f.,** Dishonesty;

(e) Paragraph **B.2.g.,** False Pretense;

(f) Paragraph **B.2.m.(2),** Errors Or Omissions; and

(g) Paragraph **B.3.**

**f. Accounts Receivable**

(1) You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2) The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

(3) Paragraph **B.** Exclusions in Section **I –** Property does not apply to this Coverage Extension except for:

(a) Paragraph **B.1.c.,** Governmental Action;

(b) Paragraph **B.1.d.,** Nuclear Hazard;

(c) Paragraph **B.1.f.,** War And Military Action;

(d) Paragraph **B.2.f.,** Dishonesty;

(e) Paragraph **B.2.g.,** False Pretense;

(f) Paragraph **B.3.;** and

(g) Paragraph **B.6.,** Accounts Receivable Exclusion.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the buildings or structures described in the Declarations or within 100 feet of the described premises, whichever distance is greater.

(2) The limitation under Paragraph **A.4.a.(5)** also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the Business Personal Property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**a. Ordinance Or Law**

(1) The enforcement of or compliance with any ordinance or law:

(a) Regulating the construction, use or repair of any property; or



    **(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

    **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

    **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    **(a)** Airborne volcanic blast or airborne shock waves;

    **(b)** Ash, dust or particulate matter; or

    **(c)** Lava flow.

With respect to coverage for volcanic action as set forth in **5(a)**, **(5)(b)** and **5(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.



© Insurance Services Office, Inc., 2012        **BP 00 03 07 13**

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

Exhibit B

(2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above, results in a "specified cause of loss" under Section I – Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungi", wet rot or dry rot results from fire or lightning; or

(2) To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(2) However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**

(3) With respect to any loss or damage subject to the exclusion in Paragraph **(1)**, such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(1) Electrical current, including arcing;

(2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(3) Pulse of electromagnetic energy; or

(4) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

(1) An occurrence that took place within 100 feet of the described premises; or

(2) Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.



**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b).**

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion **i.** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".



**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section I – Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.



**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

a. We will not pay for:

(1) Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

(2) Any other consequential loss.

b. With respect to this exclusion, suspension means:

(1) The partial slowdown or complete cessation of your business activities; and

(2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

a. Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

b. Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

c. Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limits Of Insurance of Section I – Property shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section I – Property:

a. Fire Department Service Charge;

b. Pollutant Clean-up And Removal;

c. Increased Cost Of Construction;

d. Business Income From Dependent Properties;

e. Electronic Data; and

f. Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

a. In accordance with Paragraph **C.4.b.**, the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.



© Insurance Services Office, Inc., 2012

**b.** The amount of increase is calculated as follows:

**(1)** Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date or any other policy change amending the Building limit by:

**(a)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

**(b)** .08, if no percentage of annual increase is shown in the Declarations; and

**(2)** Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit – Seasonal Increase**

**a.** Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

**(1)** The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

**(2)** 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

**b.** The increase described in Paragraph **5.a.** will apply only if the Limit Of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I – Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

**a.** Money and Securities;

**b.** Employee Dishonesty;

**c.** Outdoor Signs; and

**d.** Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense;

**d.** Civil Authority; and

**e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.



© Insurance Services Office, Inc., 2012

BP 00 03 07 13

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

  **a.** You must see that the following are done in the event of loss or damage to Covered Property:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

    **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

    **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    **(8)** Cooperate with us in the investigation or settlement of the claim.

    **(9)** Resume all or part of your "operations" as quickly as possible.

  **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

  **a.** There has been full compliance with all of the terms of this insurance; and

  **b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

  **a.** At our option, we will either:

    **(1)** Pay the value of lost or damaged property;

    **(2)** Pay the cost of repairing or replacing the lost or damaged property;

    **(3)** Take all or any part of the property at an agreed or appraised value; or

    **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

  **b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

  **c.** We will not pay you more than your financial interest in the Covered Property.

  **d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

    **(1)** At replacement cost without deduction for depreciation, subject to the following:

      **(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

        **(i)** The Limit of Insurance under Section I – Property that applies to the lost or damaged property;



(ii) The cost to replace, on the same premises, the lost or damaged property with other property:

    **i.** Of comparable material and quality; and

    **ii.** Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

(i) The actual cash value of the lost or damaged property; or

(ii) A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property.

**Example**

The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

Amount of recovery

$70,000 ÷ $80,000 = .875

.875 x $25,000 = $21,875

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or secondhand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;


Exhibit B

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts; and

**(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' improvements and betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to accounts receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to reestablish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I – Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

Exhibit B

© Insurance Services Office, Inc., 2012                    BP 00 03 07 13

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## F. Property General Conditions

### 1. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### 2. Mortgageholders

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

### 3. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### 4. Policy Period, Coverage Territory

Under Section I – Property:

**a.** We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.


Exhibit B

### G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below:

**1. Outdoor Signs**

   **a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

     **(1)** Owned by you; or

     **(2)** Owned by others but in your care, custody or control.

   **b.** Paragraph **A.3.,** Covered Causes Of Loss and Paragraph **B.,** Exclusions in Section I – Property do not apply to this Optional Coverage, except for:

     **(1)** Paragraph **B.1.c.,** Governmental Action;

     **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

     **(3)** Paragraph **B.1.f.,** War And Military Action.

   **c.** We will not pay for loss or damage caused by or resulting from:

     **(1)** Wear and tear;

     **(2)** Hidden or latent defect;

     **(3)** Rust;

     **(4)** Corrosion; or

     **(5)** Mechanical breakdown.

   **d.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Outdoor Signs shown in the Declarations.

   **e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

   **a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

     **(1)** Theft, meaning any act of stealing;

     **(2)** Disappearance; or

     **(3)** Destruction.

   **b.** In addition to the Limitations and Exclusions applicable to Section I – Property, we will not pay for loss:

     **(1)** Resulting from accounting or arithmetical errors or omissions;

     **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

     **(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

   **c.** The most we will pay for loss in any one occurrence is:

     **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

       **(a)** In or on the described premises; or

       **(b)** Within a bank or savings institution; and

     **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

   **d.** All loss:

     **(1)** Caused by one or more persons; or

     **(2)** Involving a single act or series of related acts;

   is considered one occurrence.

   **e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

   **a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

     **(1)** Cause you to sustain loss or damage; and also

     **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

       **(a)** Any employee; or

       **(b)** Any other person or organization.



© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**b.** We will not pay for loss or damage:

(1) Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

(2) Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

   (a) Whether acting alone or in collusion with other persons; or

   (b) While performing services for you or otherwise.

(3) The only proof of which as to its existence or amount is:

   (a) An inventory computation; or

   (b) A profit and loss computation.

(4) Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

(1) Caused by one or more persons; or

(2) Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

(1) Partly by this insurance; and

(2) Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

(1) You; or

(2) Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

(1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

(1) This Optional Coverage as of its effective date; or

(2) The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.,** employee means:

(1) Any natural person:

   (a) While in your service or for 30 days after termination of service;

   (b) Who you compensate directly by salary, wages or commissions; and

   (c) Who you have the right to direct and control while performing services for you;



**(2)** Any natural person who is furnished temporarily to you:

    **(a)** To substitute for a permanent employee, as defined in Paragraph **(1)** above, who is on leave; or

    **(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

  **a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

    Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

    **(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

    **(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

    **(3)** Damage to any vacuum tube, gas tube, or brush; or

    **(4)** The functioning of any safety or protective device.

  **b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2)**, Limitations, do not apply to this Optional Coverage.

  **c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

    **(1)** Paragraph **B.2.a.**, Electrical Apparatus;

    **(2)** Paragraph **B.2.d.**, Steam Apparatus; and

    **(3)** Paragraph **B.2.l.(6)**, Mechanical Breakdown.

  **d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Signs Optional Coverage** does not apply.

  **e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract any applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

    If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

  **f.** With respect to Additional Coverages **5.f.** Business Income and **5.g.** Extra Expense, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

    With respect to the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

  **g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

    **1.** "Computer" means:

      **a.** Programmable electronic equipment that is used to store, retrieve and process data; and



**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production-type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

**(1)** Your last known address; or

**(2)** The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

## H. Property Definitions

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production-type machinery or equipment.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**5.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**6.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**7.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Traveler's checks, register checks and money orders held for sale to the public.

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and



(2) Ends on the earlier of:

    (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    (b) The date when business is resumed at a new permanent location.

**b.** Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

    (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    (1) The cost of filling sinkholes; or

    (2) Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

    (1) Personal property in the open; or

    (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

    (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

    (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.



© Insurance Services Office, Inc., 2012

**14.** "Valuable papers and records" means inscribed, printed or written:

**a.** Documents;

**b.** Manuscripts; and

**c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

## SECTION II – LIABILITY

### A. Coverages

**1. Business Liability**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".


Exhibit B

**f. Coverage Extension – Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   (a) All expenses we incur.

   (b) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

   (c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

   (d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   (e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   (f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   (g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

(2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   (a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   (b) This insurance applies to such liability assumed by the insured;

   (c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   (d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   (e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   (f) The indemnitee:

     (i) Agrees in writing to:

       i. Cooperate with us in the investigation, settlement or defense of the "suit";

       ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

       iii. Notify any other insurer whose coverage is available to the indemnitee; and

Exhibit B

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

　**i.** Obtain records and other information related to the "suit"; and

　**ii.** Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above, are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II** – Liability. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and



**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by an insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";



© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

  **(i)** Any insured; or

  **(ii)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".



This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 51 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

    (b) The operation of any of the following machinery or equipment:

        (i) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;



© Insurance Services Office, Inc., 2012      BP 00 03 07 13

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph D. Liability And Medical Expenses Limits Of Insurance in Section II – Liability.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";



if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

    **(a)** Advertising, broadcasting, publishing or telecasting;

    **(b)** Designing or determining content of web sites for others; or

    **(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".



© Insurance Services Office, Inc., 2012

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section II – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section II – Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

Exhibit B

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

  **(1)** The "nuclear material":

    **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    **(b)** Has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

  **(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  **(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

  **(3)** "Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for:

      **(i)** Separating the isotopes of uranium or plutonium;

      **(ii)** Processing or utilizing "spent fuel"; or

      **(iii)** Handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

  and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

  **(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

  **(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

  **(6)** "Property damage" includes all forms of radioactive contamination of property;

  **(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  **(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  **(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";


Exhibit B

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

(10) "Waste" means any waste material:

    (a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

    (b) Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

1. If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    (1) "Bodily injury" or "personal and advertising injury":

        (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

        (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

        (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

        (d) Arising out of his or her providing or failing to provide professional health care services.

    (2) "Property damage" to property:

        (a) Owned, occupied or used by;

Exhibit B

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II** – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.



© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section II – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;



**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

    **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

    **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

    **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **(2)** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".



© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;



**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or


Exhibit B

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

    **(c)** A person or organization whose business or assets you have acquired; and

  **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

  **(1)** Work or operations performed by you or on your behalf; and

  **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **(2)** The providing of or failure to provide warnings or instructions.

## SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

  **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

    **(a)** Seasonal unoccupancy; or

    **(b)** Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

  **(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

    **(a)** Have not started; and

    **(b)** Have not been contracted for;

  within 30 days of initial payment of loss.

  **(3)** The building has:

    **(a)** An outstanding order to vacate;

    **(b)** An outstanding demolition order; or

    **(c)** Been declared unsafe by governmental authority.

  **(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

  **(5)** Failure to:

    **(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

    **(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.



**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

**1.** We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe and healthful; or

   **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.

**2.** Business Liability Coverage is excess over:

   **a.** Any other insurance that insures for direct physical loss or damage; or

   **b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

   **a.** Is responsible for the payment of all premiums; and

   **b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.



© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

  **a.** Paid to us prior to the anniversary date; and

  **b.** Determined in accordance with Paragraph **2.** above.

  Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## J. Premium Audit

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

## K. Transfer Of Rights Of Recovery Against Others To Us

**1.** Applicable to Businessowners Property Coverage:

  If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

  **a.** Prior to a loss to your Covered Property.

  **b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

    **(1)** Someone insured by this insurance;

    **(2)** A business firm:

      **(a)** Owned or controlled by you; or

      **(b)** That owns or controls you; or

    **(3)** Your tenant.

  You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

  This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

  If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

## L. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



BUSINESSOWNERS
BP 01 18 11 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A. Section I – Property** is amended as follows:

1. Paragraph **B. Exclusions** is amended as follows:

   a. Paragraph **2.l.(4)** is replaced by the following:

      **(4)** Settling, cracking, shrinking, expansion or contraction;

   b. The following is added to Paragraph **2.l. Other Types Of Loss:**

      **(8)** Release, discharge or dispersal of contaminants or pollutants.

2. Paragraph **E.2. Appraisal** Property Loss Condition is replaced by the following:

   **2. Appraisal**

   a. If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

      **(1)** Pay its chosen appraiser; and

      **(2)** Bear the other expenses of the appraisal and umpire equally.

   b. If there is an appraisal:

      **(1)** You will retain your right to bring a legal action against us, subject to the provisions of Paragraph **E.4.** Legal Action Against Us Property Loss Condition; and

      **(2)** We will still retain our right to deny the claim.

3. Paragraph **E.3. Duties In The Event Of Loss Or Damage** Property Loss Condition is amended as follows:

   a. Paragraph **a.(2)** is replaced by the following:

      **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved. However, with respect to loss or damage in the state of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, any claim must be filed with us not later than one year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim.

   b. Paragraph **a.(7)** is replaced by the following:

      **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

4. Paragraph **E.4. Legal Action Against Us** Property Loss Condition is replaced by the following, except as provided in **7.** below:

   **4. Legal Action Against Us**

   a. Except as provided in Paragraph **b.**, no one may bring a legal action against us under this insurance unless:

      **(1)** There has been full compliance with all of the terms of this insurance; and

      **(2)** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.



**b.** With respect to loss or damage in the state of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this insurance, unless:

**(1)** There has been full compliance with all of the terms of this insurance; and

**(2)** The action is brought within the earlier of the following:

**(a)** Two years and one day from the date we accept or reject the claim; or

**(b)** Three years and one day from the date of the loss or damage that is the subject of the claim.

This Paragraph **4.** does not apply to Paragraph **E.3. Legal Action Against Us** Liability And Medical Expenses General Condition in **Section II – Liability.**

**5.** Paragraph **E.5. Loss Payment** Property Loss Condition is amended as follows:

**a.** Paragraph **5.d.(1)(b)** is replaced by the following:

**(b)** If, at the time of the loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property immediately before the loss.

**b.** The following is added:

**Section 862.053. Policy A Liquidated Demand**

A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this Article shall not apply to personal property.

**c.** Under Paragraph **E.5. Loss Payment,** the provisions pertaining to notice of our intentions and the time period for payment of claims are replaced by the following:

**(1) Claims Handling**

**(a)** Within 15 days after we receive written notice of claim, we will:

**(i)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**(ii)** Begin any investigation of the claim; and

**(iii)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**(b)** We will notify you in writing as to whether:

**(i)** The claim or part of the claim will be paid;

**(ii)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(iii)** More information is necessary; or

**(iv)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **(b)(i)** through **(b)(iv)** above within:

**(i)** 15 business days after we receive the signed, sworn proof of loss and all information requested; or

**(ii)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

 **Exhibit B**          © Insurance Services Office, Inc., 2014          BP 01 18 11 14

(2) We will pay for covered loss or damage within five business days after:

    (a) We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

    (b) An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any terms of this policy, we will make payment within five business days after the date you have complied with such terms.

**(3) Catastrophe Claims**

If a claim results from a weather-related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **c.(1)** and **c.(2)** above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather-related event which:

    (a) Is declared a disaster under the Texas Disaster Act of 1975; or

    (b) Is determined to be a catastrophe by the Texas Department of Insurance.

**(4)** The term "business day", as used in the Loss Payment Property Loss Condition, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**6.** The following is added to Paragraph **F. Property General Conditions:**

**5. Loss To Real Property**

The amount of insurance applicable to loss to real property by fire will be reduced by the amount of such loss. As repairs are made, the amount reduced will be reinstated to the extent of the value of the repairs. The reinstatement will not increase the specified Limits of Insurance.

No other loss insured against in Section I – Property will reduce the specified Limits of Insurance.

**7.** Paragraphs **F.2.d.** and **F.2.f.** of the **Mortgageholders** Property General Condition are replaced by the following:

    **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

        **(1)** Pays any premium due under this policy at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 91 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

    **f.** If this policy is cancelled, we will give the mortgageholder named in the Declarations written notice of cancellation.

If we cancel this policy, we will notify the mortgageholder at least:

        **(1)** 14 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

If you cancel the policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

**8.** Paragraph **H. Property Definitions** is amended as follows:

Paragraph **9.b.** is replaced by the following:

    **b.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that regulates the construction, use or repair, or requires the tearing down of any property.

The expiration date of this policy will not cut short the "period of restoration".



**B. Section II – Liability** is amended as follows:

1. The following is added to Paragraph **E.2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** Liability And Medical Expenses General Condition and similar conditions in any endorsement attached to this policy:

   We will notify the first Named Insured in writing of:

   **a.** An initial offer to settle a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

   **b.** Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

2. The following provision applies:

   With regard to liability for "bodily injury", "property damage" and "personal and advertising injury", unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this policy requiring you or any insured to give notice of "occurrence", claim or "suit" or to forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this policy.

**C. Section III – Common Policy Conditions** is amended as follows:

1. Paragraph **2.** under **A. Cancellation** is replaced by the following:

   **2.** We may cancel this policy:

   **a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

   **b.** For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

   **(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official; or

**(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

   **(a)** Fraud in obtaining coverage;

   **(b)** Failure to pay premiums when due;

   **(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

   **(d)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

   **(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**c.** For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

   **(1)** If this policy has been in effect for less than 90 days, we may cancel this policy for any reason.

   **(2)** If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel this policy only for the following reasons:

   **(a)** If the first Named Insured does not pay the premium or any portion of the premium when due;

   **(b)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

   **(c)** If the Named Insured submits a fraudulent claim; or

   **(d)** If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

**Exhibit B**        © Insurance Services Office, Inc., 2014        **BP 01 18 11 14**

2. The following paragraph is added and supersedes any provision to the contrary:

**M. Nonrenewal**

1. We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

3. Paragraph **3.** under **I. Premiums** does not apply.

Exhibit B

© Insurance Services Office, Inc., 2014

POLICY NUMBER: BPP1092982

**BUSINESSOWNERS**
**BP 02 04 01 06**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – AMENDMENT OF CANCELLATION PROVISIONS OR COVERAGE CHANGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

In the event of cancellation or material change that reduces or restricts the insurance afforded by this Policy, we agree to mail prior written notice of cancellation or material change to:

### SCHEDULE

| |
|---|
| **A. Name:**<br>INTERNATIONAL INSTITUTE OF AESTHETIC ARTS & BEAUTY LLC |
| **B. Address:**<br>glammeupgiro@aol.com |
| **C. Number Of Days Advance Notice:**<br>10 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

© ISO Properties, Inc., 2004

**Exhibit B**

BUSINESSOWNERS
BP 77 93 07 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – EQUIPMENT BREAKDOWN

This endorsement modifies insurance provided under the following:

EQUIPMENT BREAKDOWN COVERAGE ENDORSEMENT

A.    The following coverages are added:

1.  Defense

    If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control that was directly caused by an "accident" to "covered equipment" we will either:

    a.   Settle the claim or "suit"; or

    b.   Defend you against the claim or "suit" but keep for ourselves the right to settle it at any point.

2.  Supplementary Payments

    We will pay, with respect to any claim or "suit" we defend:

    a.   All expenses we incur;

    b.   The cost of bonds to release attachments, but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds;

    c.   All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work;

    d.   All costs taxed against you in any "suit" we defend;

    e.   Pre-judgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer; and

    f.   All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declarations.

    These payments will not reduce the Limit of Insurance.

B.    As respects Equipment Breakdown Coverage only, the following are added:

1.  Bankruptcy

    The bankruptcy or insolvency of you or your estate will not relieve us of an obligation under this coverage section.

    2.    Legal Action Against Us


Exhibit B

No one may bring a legal action against us under this Equipment Breakdown coverage unless:

    a.   There has been full compliance with all the terms of this Equipment Breakdown coverage; and

    b.   The action is brought within 2 years and 1 day from the date that cause of action first accrues.

    c.   We agree in writing that you have an obligation to pay for damage to Covered Property of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into an action to determine your liability.

C.      With respect to Equipment Breakdown Coverage only, the following Definition is added:

"Suit" means a civil proceeding and includes:

1.    An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

2.    Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

**BP 77 93 07 16**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 2 of 2**

Exhibit B

**CYB-TX 77 00 06 19**

# TEXAS CHANGES

These changes modify insurance provided under the following:

**CYBER INSURANCE COVERAGE**

**SECTION I-COVERAGES,** Paragraph **B. OUR RIGHTS AND DUTIES IN THE EVENT OF CLAIMS** is replaced by the following:

**We** have the right and duty to defend, and pay on **your** behalf any **Claim Expenses** resulting from, any **Claim** to which this insurance applies, even if the allegations are groundless, false, or fraudulent. **We** have the right to investigate, direct the defense, and settle any **Claim** as **we** deem expedient. Our duty ends when the Endorsement's applicable Limit of Insurance has been exhausted by **our** payment of **Damages,** **Claim Expenses, Regulatory Fines, Privacy Breach Expenses** or **Business Income Loss** and **Extra Expense** or **we** have deposited the Endorsement's remaining applicable Limit of Insurance with a court of competent jurisdiction. **We** have no obligation or duty to defend any **Claim** or pay any **Claims Expenses** for which coverage is excluded or not otherwise afforded by the Endorsement.

If any **Claim Expenses** require the **Insured** to pay on **our** behalf or at our direction, **we** must provide a reimbursement payment to the **Insured** within five (5) business days after such payment is made.

**SECTION III-EXCLUSIONS** Paragraph **A. 7** is deleted in its entirety.

**SECTION IV-LIMITS OF INSURANCE AND DEDUCTIBLE** Paragraph **F.** is deleted in its entirety.

**SECTION V-CONDITIONS** Paragraph **4.** of Condition **C. NOTICE OF PRIVACY BREACH EVENTS, NETWORK DISRUPTIONS, SYSTEM COMPROMISES, EXTORTION THREATS, REGULATORY PROCEEDINGS AND CLAIMS** is replaced by the following:

4. Insured's Duties in the Event of a **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise, Extortion Threat** or **Network Disruption**.

   a. If there is a **Claim, Regulatory Proceeding, Privacy Breach Event, Extortion Threat** or

**Network Disruption, you** must also do the following:

i. Fully assist and cooperate with **us** in the conduct, defense, investigation, negotiation, and settlement of any **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise,** Extortion **Threat,** or **Network Disruption**. At **our** request, **you** must provide us with written statements; attend meetings and negotiations; produce and make available all information, books, records, documents and other materials which we deem relevant to the **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise, Extortion Threat** or **Network Disruption** or coverage therefor; attend hearings, depositions, proceedings, trials and appeals; assist **us** in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses, and pursuing or enforcing any right of contribution or indemnity against a person or entity who may be liable to **you**.

ii. **You** must do whatever is necessary to secure and affect any rights of indemnity, contribution, or apportionment that **you** may have.

iii. **You** shall accept our assignment of counsel and shall refrain from discussing any **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise, Extortion Threat** or **Network Disruption** with anyone other than counsel retained to represent the **Insured** or our representatives.

iv. With respect to a **Privacy Breach Event, System Compromise** or **Extortion Threat, you** must take all reasonable steps to protect **Computer Systems** and **Protected Information** from further loss or damage, and keep a record of the expenses necessary to

Exhibit B

Page 1 of 2

CYB-TX 77 00 06 19

protect such **Computer Systems** and **Protected Information.**

v.  With respect to a **Network Disruption**, **you** must take all reasonable steps and measures to limit or mitigate the **Business Income Loss** and the incurrence of **Extra Expenses**.

b.  After the discovery of any **Network Disruption** and within ninety (90) days of **our** request, the **Named Insured** must furnish **us** with written proof of the **Named Insured's** claimed loss, duly sworn to, with full particulars.

c.  No Insured will, except at its own cost, voluntarily make a payment, admit liability, retain attorneys, consultants, or vendors, assume any other obligation, or accept or reject arbitration without our prior written consent. Any payments, settlements, or admissions you make without our prior written consent will be made at your own expense.

**SECTION V-CONDITIONS** Condition **E. ACTION AGAINST US** is replaced by the following:

### E. ACTION AGAINST US

No action shall be brought against **us** by any **Insured**, unless, as a condition precedent thereto:

1.  All **Insureds** have fully complied with all the terms and conditions of this Endorsement; and

2.  With respect to a **Claim**, the amount of **Damages** has been fixed or rendered certain:

a.  By final judgment against the **Insured** after trial of the issues; and

b.  The time to appeal such judgment has expired without an appeal being taken; and

c.  If appeal is taken, after the appeal has been determined; and

d.  The **Claim** is settled in accordance with the terms and conditions of this Endorsement.

No individual or entity shall have any right under this Endorsement to join **us** as a party to any **Claim** to determine the liability of any **insured**; nor shall **we** be impleaded by **you** or **your** legal representative in any such **Claim**.

In no event shall any action brought by anyone be maintained against **us** unless such action is brought within the time frame set forth by applicable State Law.

# Exhibit B

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

© ISO Properties, Inc., 2003

Exhibit B

IL N 178 03 13

# TEXAS PERIOD TO FILE A CLAIM OR BRING LEGAL ACTION AGAINST US NOTICE – WINDSTORM OR HAIL – CATASTROPHE AREA

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), **the provisions of the policy (including its endorsements) shall prevail.**

Carefully read your policy, including the endorsements attached to your policy.

In accordance with Texas Insurance Code Section 2301.010(f), we are notifying you that:

1. With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, any claim must be filed with us not later than one year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim; and

2. Any legal action brought against us under the policy for loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, must be brought within the earlier of the following:

   a. Two years and one day from the date we accept or reject the claim; or

   b. Three years and one day from the date of the loss or damage that is the subject of the claim.


Exhibit B

BUSINESSOWNERS
BP 04 17 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Exhibit B

© Insurance Services Office, Inc., 2009

Page 1 of 1

POLICY NUMBER: BPP1092982

**BUSINESSOWNERS
BP 04 48 07 13**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| VIOLA BLUE RIDGE, LP |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Liability** is amended as follows:

**A.** The following is added to Paragraph **C. Who Is An Insured:**

  **3.** Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

  However:

  **a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

  **b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits Of Insurance shown in the Declarations.


Exhibit B

BUSINESSOWNERS
BP 04 83 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# REMOVAL OF INSURANCE-TO-VALUE PROVISION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Paragraph **E.5.d. Loss Payment** Property Loss Condition in **Section I – Property** is amended as follows:

**A.** Paragraph **d.(1)(a)** is replaced by the following:

  **(1)** At replacement cost without deduction for depreciation, subject to the following:

    **(a)** We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

      **(i)** The Limit of Insurance under Section I – Property that applies to the lost or damaged property;

      **(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

        **i.** Of comparable material and quality; and

        **ii.** Used for the same purpose; or

      **(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

      If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**B.** Paragraph **d.(1)(b)** does not apply.

© Insurance Services Office, Inc., 2009

Exhibit B

**BUSINESSOWNERS**
**BP 05 01 07 02**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.



© ISO Properties, Inc.,  2001                                          **Page 1 of 1**

POLICY NUMBER: BPP1092982

**BUSINESSOWNERS**
**BP 05 15 01 15**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)**      $0.00 |
| **Additional information, if any, concerning the terrorism premium:** |
| |
| **SCHEDULE – PART II** |
| **Federal share of terrorism losses % Year: 20** |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses % Year: 20** |
| (Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**BP 05 15 01 15**

© Insurance Services Office, Inc., 2015

Page 1 of 2

**Exhibit B**

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

BP 05 15 01 15

Exhibit B

BUSINESSOWNERS
BP 05 17 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – SILICA OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B. Exclusions** in **Section II – Liability:**

**B. Exclusions**

This insurance does not apply to:

**SILICA OR SILICA-RELATED DUST**

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

4. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** in **Section II – Liability:**

1. "Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

<span style="color:red">Exhibit B</span>

© ISO Properties, Inc., 2005

**BUSINESSOWNERS**
**BP 05 23 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

---

BP 05 23 01 15     © Insurance Services Office, Inc., 2015     **Page 1 of 1**


Exhibit B

BUSINESSOWNERS
BP 05 77 01 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II – Liability:**

**A.** The following exclusion is added to Paragraph **B.1., Exclusions – Applicable To Business Liability Coverage:**

    **t. Fungi Or Bacteria**

      **(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

      **(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

      This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following definition is added Paragraph **F. Liability And Medical Expenses Definitions:**

    **1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

Exhibit B
© ISO Properties, Inc.,  2004

POLICY NUMBER: BPP1092982

**BUSINESSOWNERS**
**BP 12 03 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number: 1 | Building Number: 1 | ApplicableClause                          A (Indicate Paragraph A, B, C or D): |
|---|---|---|
| **Description Of Property:**   1022 SOUTH GREENVILLE AVENUE  ALLEN, TX 75002 ||| 
| **Loss Payee Name:**        TIME PAYMENT ||| 
| **Loss Payee Address:**      1600 DISTRICT AVE #200  BURLINGTON, MA 01803 ||| 
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||| 

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I – Property,** as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

Exhibit B

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

    b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

    c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

        (1) Pays any premium due under this policy at our request if you have failed to do so;

        (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

        All of the terms of **Section I – Property** will then apply directly to the Loss Payee.

    d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

        (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        (2) The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

    a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    a. Adjust losses with you; and

    b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to Paragraph **H. Other Insurance** in **Section III – Common Policy Conditions:**

    For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

2. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

   © Insurance Services Office, Inc., 2009   BP 12 03 01 10

**Exhibit B**

BUSINESSOWNERS
BP 15 04 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Exclusion **B.1.q.** of **Section II – Liability** is replaced by the following:

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)** Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

 © Insurance Services Office, Inc., 2013

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II – Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.



© Insurance Services Office, Inc., 2013

**BP 15 04 05 14**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

A.    The following is added to Paragraph A.3. Covered Causes of Loss in Section I – Property:

**Additional Coverage-- Equipment Breakdown**
The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

1.    We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

    a.    Mechanical breakdown, including rupture or bursting caused by centrifugal force;

    b.    Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

    c.    Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

    d.    Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

    e.    Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2.    Unless otherwise shown in a "schedule," the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

    a.    Expediting Expenses
    With respect to your damaged Covered Property, we will pay the reasonable extra cost to:
    (1)    Make temporary repairs; and
    (2)    Expedite permanent repairs or permanent replacement.
    The most we will pay for loss or expense under this coverage is $25,000 unless otherwise shown in a "schedule."

    b.    Hazardous Substances
    We will pay your additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.
    This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in 2.c.(1)(b) below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.
    The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in a "schedule."

    c.    Spoilage
    (1)    We will pay:
        (a)    For physical damage to "perishable goods" due to spoilage;
        (b)    For physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;



    (c)    Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

    (2)    If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

The most we will pay for loss, damage or expense under this coverage is $25,000 unless otherwise shown in a "schedule."

**d.**    **Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "electronic data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in a "schedule."

**e.**    **Service Interruption**

    (1)    Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

    (2)    Unless otherwise shown in a "schedule," coverage for any loss of Business Income you sustain resulting from the interruption of utility services will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident." If the interruption exceeds 24 hours, coverage will begin at the time of the interruption, and the deductible applicable to Business Income will apply.

    (3)    The most we will pay in any "one accident" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense or Spoilage, except that if a limit is shown in a "schedule" for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

**f.**    **Business Income and Extra Expense**

Any insurance provided under this policy for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in a "schedule," then as respects Equipment Breakdown coverage, the "period of restoration" will begin immediately after the "accident," and the deductible shown in the "schedule" will apply. The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in a "schedule."

**B.**    The following is added to Paragraph B. Exclusions:

**Equipment Breakdown Exclusions**

All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this endorsement.

1.    The following exclusions are modified:

    a.    As respects this endorsement only, the next to the last paragraph in Exclusion B.1.h. is deleted and replaced with the following:

    However, if excluded loss or damage, as described in Paragraph (1) above results in an "accident," we will pay only for the loss, damage or expense caused by such "accident."

    b.    As respects this endorsement only, the last paragraph of Exclusion B.2.l. is deleted and replaced with the following:



But if an excluded cause of loss that is listed in 2.l.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

c.    The following is added to Exclusions B.2.m. and B.2.n.:

We will also pay for direct physical loss or damage caused by an "accident."

2.    The following exclusions are added:

a.    We will not pay for loss, damage or expense caused by or resulting from:

(1)    A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or

(2)    Any of the following:

(a)    Defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind; or

(b)    Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."

b.    With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in A.1.c. above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

c.    With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for any increase in loss resulting from an agreement between you and your customer or supplier.

d.    We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident": Any "fungi," wet rot or dry rot, including any presence, growth, proliferation, spread or any activity of "fungi," wet rot or dry rot. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such "fungi," wet rot or dry rot. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that such spoilage is covered under Spoilage coverage.

e.    We will not pay for any loss or damage to animals.

C.    DEDUCTIBLES

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a "schedule." If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision D. Deductibles is deleted and replaced with the following:

1.    Deductibles for Each Coverage

a.    Unless the "schedule" indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

b.    We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the "schedule." We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

c.    If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

2.    Direct and Indirect Coverages

a.    Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the "schedule."

b.    Unless more specifically indicated in the "schedule":

(1)    Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and

(2)    Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.



3.    Application of Deductibles

a.    Dollar Deductibles

We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the "schedule." We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.

b.    Time Deductible

If a time deductible is shown in the "schedule," we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

c.    Multiple of Average Daily Value (ADV)

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

The number indicated in the "schedule" will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

d.    Percentage of Loss Deductibles

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**D.    CONDITIONS**

The following conditions are in addition to the Conditions in the Businessowners Coverage Form.

1.    Suspension

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

a.    Your last known address; or

b.    The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment."  If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

2.    Jurisdictional Inspections

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

3.    Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer for people, or more energy or water efficient than the equipment being replaced.

However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This condition does not apply to the replacement of component parts or to any property to which Actual Cash Value applies and does not increase any of the applicable limits.


Exhibit B

4.    Coinsurance
If a coinsurance percentage is shown in a "schedule" for specified coverages, the following condition applies.
We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss.  Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

E.    The following definitions are added:
1.    "Boilers and vessels" means:
a.    Any boiler, including attached steam, condensate and feedwater piping; and
b.    Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.
This term does not appear elsewhere in this endorsement, but may appear in a "schedule."
2.    "Covered equipment"
a.    "Covered equipment" means, unless otherwise specified in a "schedule," Covered Property:
(1)    That generates, transmits or utilizes energy; or
(2)    Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.
"Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.
b.    None of the following is "covered equipment":
(1)    Structure, foundation, cabinet or compartment;
(2)    Insulating or refractory material;
(3)    Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;
(4)    Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
(5)    "Vehicle" or any equipment mounted on a "vehicle";
(6)    Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;
(7)    Dragline, excavation or construction equipment; or
(8)    Equipment manufactured by you for sale.
3.    "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.
4.    "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."
5.    "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.
6.    "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus.  However, "production machinery" does not mean any boiler, or fired or unfired pressure vessel.
This term does not appear elsewhere in this endorsement, but may appear in a "schedule."
7.    "Schedule" means the Equipment Breakdown Coverage Schedule.
8.    "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to: car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.
However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations unless otherwise shown in a "schedule." Coverage provided under this endorsement does not provide an additional amount of insurance.



# BUSINESSOWNERS COVERAGE FORM INDEX

This index is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the index, or noted elsewhere in it. For instance, an **Exclusion** feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Abandonment Property Loss Condition | 24 | Business Liability Coverage | 34-36 |
| Accounts Receivable Coverage Extension | 16 | Business Personal Property Coverage | 1-2 |
| Accounts Receivable Exclusion | 22 | Business Personal Property Limit – Seasonal Increase (Limit Of Insurance) | 23 |
| Acts Or Decisions Exclusion | 22 | Business Personal Property Temporarily In Portable Storage Units Coverage Extension | 17 |
| Additional Coverages | 3-14 | Cancellation Condition | 50 |
| Additional Exclusion – Loss Or Damage To Products Exclusion | 22 | Certain Computer-related Losses Exclusion | 19 |
| "Advertisement" Definition | 46 | Changes Condition | 51 |
| Aggregate Limits (Liability And Medical Expenses Limits Of Insurance) | 45 | Changes In Or Extremes Of Temperature Exclusion | 21 |
| Aircraft, Auto Or Watercraft Exclusion | 38-39 | Civil Authority Additional Coverage | 8-9 |
| Appraisal Property Loss Condition | 24 | Collapse Additional Coverage | 5-6 |
| "Auto" Definition | 46 | Collapse Exclusion | 21 |
| Bankruptcy General Condition | 45 | "Computer" Definition | 32 |
| "Bodily Injury" Definition | 46 | Concealment, Misrepresentation Or Fraud Condition | 51 |
| Building Coverage | 1 | Consequential Losses Exclusion | 20 |
| Building Limit – Automatic Increase (Limits Of Insurance) | 23 | Continuous Or Repeated Seepage Or Leakage Of Water Exclusion | 21-22 |
| Business Income Additional Coverage | 6-7 | Contractual Liability Exclusion | 36 |
| Business Income And Extra Expense Exclusions | 22 | Control Of Property General Condition | 28 |
| Business Income From Dependent Properties Additional Coverage | 10-11 | "Counterfeit Money" Definition | 32 |



| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Coverage Extension – Supplementary Payments (Business Liability Coverage) | 35-36 | Employer's Liability Exclusion | 37 |
| Coverage Extensions – Section I – Property | 14-17 | Equipment Breakdown Protection Optional Coverage | 31-32 |
| "Coverage Territory" Definition | 46-47 | Errors Or Omissions Exclusion | 21 |
| Covered Causes Of Loss | 2 | Examination Of Your Books And Records Condition | 51 |
| Covered Property | 1-2 | Exclusions – Section I – Property | 17-22 |
| Damage To Impaired Property Or Property Not Physically Injured Exclusion | 40 | Exclusions – Section II – Liability | 36-44 |
| Damage To Property Exclusion | 40 | "Executive Officer" Definition | 47 |
| Damage To Your Product Exclusion | 40 | Expected Or Intended Injury Exclusion | 36 |
| Damage To Your Work Exclusion | 40 | Exposed Property Exclusion | 20 |
| Dampness Or Dryness Of Atmosphere Exclusion | 21 | Extended Business Income Coverage (Business Income Additional Coverage) | 7 |
| Debris Removal Additional Coverage | 3-4 | Extra Expense Additional Coverage | 7-8 |
| Deductibles | 23-24 | False Pretense Exclusion | 20 |
| Dishonesty Exclusion | 20 | Fire Department Service Charge Additional Coverage | 5 |
| Duties In The Event Of Loss Or Damage Property Loss Condition | 24 | Fire Extinguisher Systems Recharge Expense Additional Coverage | 11-12 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit General Condition | 46 | Forgery Or Alteration Additional Coverage | 9 |
| Earth Movement Exclusion | 17-18 | Frozen Plumbing Exclusion | 20 |
| Electrical Apparatus Exclusion | 19-20 | "Fungi" Definition | 32 |
| Electrical Disturbance Exclusion | 21 | "Fungi", Wet Rot Or Dry Rot Exclusion | 19 |
| Electronic Data Additional Coverage | 12 | Glass Expenses Additional Coverage | 11 |
| "Electronic Data" Definition | 32 | Governmental Action Exclusion | 18 |
| Electronic Data Exclusion | 41-42 | "Hostile Fire" Definition | 47 |
| "Employee" Definition | 47 | "Impaired Property" Definition | 47 |
| Employee Dishonesty Optional Coverage | 29-31 | Increased Cost Of Construction Additional Coverage | 9-10 |


© Insurance Services Office, Inc., 2012
BP IN 01 07 13

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Inspections And Surveys Condition | 51 | Medical Expenses Exclusions | 42-44 |
| Installation, Testing, Repair Exclusion | 21 | "Member" Definition | 32 |
| Insurance Under Two Or More Coverages Condition | 51 | Mobile Equipment Exclusion | 39 |
| "Insured Contract" Definition | 47 | "Mobile Equipment" Definition | 48 |
| Interruption Of Computer Operations Additional Coverage | 12-13 | Money And Securities Optional Coverage | 29 |
| "Leased Worker" Definition | 47 | "Money" Definition | 32 |
| Legal Action Against Us General Condition – Section II – Liability | 46 | Money Orders And "Counterfeit Money" Additional Coverage | 9 |
| Legal Action Against Us Property Loss Condition – Section I – Property | 24 | Mortgageholders Property General Condition | 28 |
| Liability And Medical Expenses Definitions | 46-50 | Neglect Exclusion | 21 |
| Liability And Medical Expenses General Conditions | 45-46 | Negligent Work Exclusion | 22 |
| Liability And Medical Expenses Limits Of Insurance | 45 | Nesting Or Infestation Exclusion | 21 |
| Liberalization Condition | 51 | Newly Acquired Or Constructed Property Coverage Extension | 14-15 |
| Limitations | 2-3 | No Benefit To Bailee Property General Condition | 28 |
| Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage | 13-14 | Nuclear Energy Liability Exclusion | 42-44 |
| Limits Of Insurance – Section I – Property | 23 | Nuclear Hazard Exclusion | 18 |
| Liquor Liability Exclusion | 36-37 | "Occurrence" Definition | 48 |
| "Loading Or Unloading" Definition | 48 | "Operations" Definition | 32 |
| Loss Payment Property Loss Condition | 24-27 | Optional Coverages | 28-32 |
| "Manager" Definition | 32 | Ordinance Or Law Exclusion | 17 |
| Marring Or Scratching Exclusion | 21 | Other Insurance Condition | 51 |
| Mechanical Breakdown Exclusion | 21 | Other Types Of Loss Exclusion | 21 |
| Medical Expenses Coverage | 36 | Outdoor Property Coverage Extension | 15 |

Exhibit B

© Insurance Services Office, Inc., 2012

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Outdoor Signs Optional Coverage | 28-29 | Property Not Covered | 2 |
| "Period Of Restoration" Definition | 32 | Recall Of Products, Work Or Impaired Property Exclusion | 40 |
| "Personal And Advertising Injury" Definition | 48 | Recovered Property Loss Condition | 27 |
| Personal And Advertising Injury Exclusion | 40-41 | Resumption Of Operations Property Loss Condition | 27 |
| Personal Effects Coverage Extension | 15 | Rust Or Other Corrosion Exclusion | 21 |
| Personal Property Off-premises Coverage Extension | 15 | Section I – Property | 1-33 |
| Policy Period, Coverage Territory Property General Condition | 28 | Section II – Liability | 34-50 |
| Pollutant Clean-up And Removal Additional Coverage | 8 | Section III – Common Policy Conditions | 50-52 |
| "Pollutants" Definition – Section I – Property | 33 | "Securities" Definition | 33 |
| "Pollutants" Definition – Section II – Liability | 48 | Separation Of Insureds General Condition | 46 |
| Pollution Exclusion – Section I – Property | 21 | Settling, Cracking, Shrinking Or Expansion Exclusion | 21 |
| Pollution Exclusion – Section II – Liability | 37-38 | Smog Exclusion | 21 |
| Premium Audit Condition | 52 | Smoke, Vapor, Gas Exclusion | 20 |
| Premiums Condition | 51-52 | "Specified Causes Of Loss" Definition | 33 |
| Preservation Of Property Additional Coverage | 4-5 | Steam Apparatus Exclusion | 20 |
| "Products-completed Operations Hazard" Definition | 49 | "Stock" Definition | 33 |
| Professional Services Exclusion | 39-40 | "Suit" Definition | 49 |
| "Property Damage" Definition | 49 | "Temporary Worker" Definition | 49 |
| Property Definitions | 32-33 | Transfer Of Rights Of Recovery Against Others To Us Condition | 52 |
| Property General Conditions | 28 | Transfer Of Your Rights And Duties Under This Policy Condition | 52 |
| Property Loss Conditions | 24-28 | Utility Services Exclusion | 18 |

Exhibit B

© Insurance Services Office, Inc., 2012

BP IN 01 07 13

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Vacancy Property Loss Condition | 27 | Water Damage, Other Liquids, Powder Or Molten Material Damage Additional Coverage | 6 |
| Valuable Papers And Records Coverage Extension | 15-16 | Water Exclusion | 19 |
| "Valuable Papers And Records" Definition | 33 | Wear And Tear Exclusion | 21 |
| Violation Of Customer Protection Statutes Exclusion | 42 | Weather Conditions Exclusion | 22 |
| Virus Or Bacteria Exclusion | 19 | Who Is An Insured | 44-45 |
| "Volunteer Worker" Definition | 49 | Workers' Compensation And Similar Laws Exclusion | 37 |
| War And Military Action Exclusion | 18 | "Your Product" Definition | 49-50 |
| War Exclusion | 39 | "Your Work" Definition | 50 |

CYB 00 01 06 19

## THIS ENDORSEMENT PROVIDES INDEPENDENT COVERAGES, TERMS, AND DEFINITIONS. PLEASE READ IT CAREFULLY.

### CYBER COVERAGE INSURANCE

**THE ENDORSEMENT'S AGGREGATE LIMIT OF LIABILITY WILL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DAMAGES, CLAIM EXPENSES, PRIVACY BREACH EXPENSES AND BUSINESS INCOME LOSS AND EXTRA EXPENSES.**

### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

Various provisions in this Endorsement restrict coverage. Read the entire Endorsement carefully to determine rights what is and what is not covered, in additional to rights and duties.

Throughout this Endorsement the words in **bold** are defined terms within "Section II, Definitions" section of this Endorsement. Throughout this Endorsement, the words **"you"** and **"your"** refer to the **Insured** and the words **"we," "us,"** and **"our"** refer to the Company providing this insurance as defined in "Section II, Definitions".

### SCHEDULE

| Coverage | Limit of Insurance/ Sublimit of Insurance | Deductible / Waiting Period |
|---|---|---|
| **A.** Third Party Cyber Liability Coverage | **$25,000** | **$1,000** |
| Sublimit for all PCI Fines which is part of and not in addition to the Third Party Cyber Liability Coverage Limit. | **$10,000** | |
| **B.** Regulatory Proceeding Coverage | **$25,000** | **$1,000** |
| Sublimit for all Regulatory Fines which is part of and not in addition to the Regulatory Proceeding Coverage Limit. | **$10,000** | |
| **C.** First Party Privacy Breach Expense Coverage | **$25,000** | **$1,000** |
| Sublimit for all Extortion Threat Expenses for each Extortion Threat which is part of and not in addition to the First Party Privacy Breach Expense Coverage Limit. | **$10,000** | |
| Sublimit for all Data Replacement and System Restoration Expenses for each System Compromise which is part of and not in addition to the First Party Privacy Breach Expense Coverage Limit. | **$10,000** | |
| **D.** First Party Business Interruption Coverage Aggregate | **$0** | |
| **E.** Cyber Coverage Aggregate | **$25,000** | |
| **Endorsement Premium** | **$55.00** | |

**Endorsement Period:** From  **07/01/2021**    to  **07/01/2022**

At 12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein

## SECTION I – COVERAGES

### A. INSURING AGREEMENTS

**1.** Third Party Cyber Liability Coverage:

**We** will pay on **your** behalf those **Damages** and **Claim Expenses you** become legally obligated to pay resulting from any **Claim**, provided such **Claim** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with "Section V. CONDITIONS C.", for any:

**a. Media Wrongful Act;**

**b. Network Security Wrongful Act;**

**c. Privacy Wrongful Act;**

**d. PCI Fines.**

**2. Regulatory Proceeding** Coverage:

**We** will pay on **your** behalf those **Claim Expenses** and **Regulatory Fines you** become legally obligated to pay resulting from **Regulatory Proceeding** for a **Privacy Wrongful Act,** provided such **Regulatory Proceeding** is first discovered by **you** during the **Endorsement Period** or within thirty (30)

Exhibit B

days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with "Section V. CONDITIONS C."

**3.** First Party **Privacy Breach Expense** Coverage:

**We** will pay the **Named Insured** those **Privacy Breach Expenses** directly incurred in responding to a **Privacy Breach Event**, **System Compromise** or **Extortion Threat**, provided such **Privacy Breach Event, System Compromise** or **Extortion Threat** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with "Section V. CONDITIONS C."

**4.** First Party Business Interruption Coverage:

**We** will pay the **Named Insured** for the **Business Income Loss** and **Extra Expense** the **Named Insured** sustained during a **Reconstruction Period** directly caused by a **Network Disruption** to the **Named Insured's Computer System,** provided such **Network Disruption** is first discovered by **you** during the **Endorsement Period** or within thirty (30) days after the end of the **Endorsement Period** if this Endorsement is not renewed and is reported to **us** in accordance with "Section V. CONDITIONS C."

**B. Our** Rights and Duties in the Event of **Claims**

**We** have the right and duty to defend, and pay on **your** behalf any **Claim Expenses** resulting from, any **Claim** to which this insurance applies, even if the allegations are groundless, false, or fraudulent. **We** have the right to investigate, direct the defense and/or settle any **Claim** as **we** deem expedient. **Our** duty ends when the Endorsement's applicable Limit of Insurance has been exhausted by our payment of **Damages, Claim Expenses, Regulatory Fines, Privacy Breach Expenses or Business Income Loss** and **Extra Expense** or **we** have deposited the Endorsement's remaining applicable Limit of Insurance with a court of competent jurisdiction. **We** have no obligation or duty to defend any **Claim** or pay any **Claims Expenses** for which coverage is excluded or not otherwise afforded by the Endorsement.

**SECTION II – DEFINITIONS**

**A. Attack** means any unauthorized intrusion or denial of service, including any **Malicious Code** or variant thereof, **Network Disruption, System Compromise, Unauthorized Access or Unauthorized Use** into the **Named Insured's Computer System.**

**B. Business Income Loss** means net profit the **Named Insured** would have earned before taxes during the **Reconstruction Period,** in excess of

the Waiting Period Deductible indicated in the Schedule,if no **Network Disruption** taken place **Business Income Loss** shall not include any contractual penalties.

**C. Claim** means:

**1.** A written demand or assertion of a legal right for money or services received by **you** for a **Wrongful Act**, including service upon **you** of a lawsuit or arbitration proceeding seeking injunctive relief for a **Wrongful Act;**

**2.** A **PCI Fine Assessment** against the **Named Insured.**

A **Claim** does not include a **Regulatory Proceeding**.

**D. Claim Expenses** means with respect to any **Claim** or **Regulatory Proceeding:**

**1-1.** Reasonable and necessary fees, costs and expenses charged by any lawyer or other vendor designated or approved in writing by **us** directly resulting from the investigation, adjustment, settlement and/or defense of such **Claim** or **Regulatory Proceeding;**

**1-2.** Reasonable and necessary expenses charged by a vendor designated or approved in writing by **us** to investigate an **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** to determine how **Protected Information** was accessed;

**1-3.** All interest on the full amount of any covered judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or have deposited into a court of competent jurisdiction that part of the judgment which is within the remaining applicable Limits of Insurance; and

**1-4.** The premiums for appeal, attachment, or similar bonds, but only for bond amounts within the applicable Limits of Insurance. **We** do not have to furnish these bonds.

**Claim Expenses** do not include:

**2-1.** Fees, costs or expenses in responding to a **PCI Fine Assessment;**

**2-2.** Salaries, wages, fees, remuneration, overhead, benefits or expenses of **our** or **your** employees or officials;

**2-3.** Fees, costs, or expenses incurred prior to the time that a **Claim** or **Regulatory Proceeding** is reported to **us** or paid or incurred without **our** prior written consent, and such unilaterally incurred fees, costs or expenses shall not reduce any deductible under the Endorsement;

**2-4.** Costs to inspect, investigate, withdraw, alter, recall, reprocess, restore, replace, retract, amend, reprint, reproduce, remediate, correct, enhance, upgrade or modify **Electronic Media;**

**2-5.** Costs and expenses to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief;

**2-6.** Costs or expenses incurred to prevent future **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System**;

**2-7.** Any fines or penalties assessed as a result of a **Regulatory Proceeding**.

**E. Computer System** means any electronic device, electronic and paper storage media as well as any communications networks owned or operated exclusively for the benefit of a single owner. **Computer System** includes outsourced Cloud based storage.

**F. Damages** means any monetary amount which **you** become legally obligated to pay as the result of a **Claim**, including judgments, awards, damages, settlements to which **we** have consented in writing, prejudgment and post-judgment interest awarded which directly arise from and correspond to the portion of any judgment attributable to a covered **Claim**.

**Damages** do not include:

**1.** Any amount for which the **Insured** is not liable or legally obligated to pay;

**2.** Punitive and exemplary damages, liquidated damages, taxes, fines or penalties, or any multiples thereof, other than **PCI Fines**;

**3.** Matters uninsurable under the law applicable to this Endorsement;

**4.** Past, present and future earned and unearned royalties, profits, fees, costs, expenses, commissions, or the return of royalties, profits, fees, costs, expenses, commissions, and profits unjustly held or obtained;

**5.** Costs and expenses required to comply with any injunctive or other non-monetary equitable, declaratory, regulatory or administrative relief, including specific performance, or any agreement to provide such relief;

**6.** Discounts, prizes, awards, coupons, or other incentives offered to the **Named Insured's** clients or customers.

**G. Electronic Media** means audio, digital, informational or visual material in electronic form transmitted over the Internet or other computer media; provided, however, **Electronic Media** does not include:

**1.** Material in print or in any form other than that transmitted electronically over the Internet or other computer media;

**2.** Scripts or films for theatrical release, radio or television programming, or books, manuals or other content on disk, e-reader, tablet or similar device.

**H. Endorsement Period** means the period from the inception date stated in the Endorsement Schedule to the expiration date stated in the Endorsement Schedule, or its earlier cancellation date, if any.

**I. Exploit** means an **Attack** designed to find, create, or take advantage of vulnerabilities in a **Computer System.**

**J. Extortion Threat** means a credible threat or series of credible threats by a third party who is not an **Insured** to cause a **Privacy Breach Event,** or to cause or perpetuate a **Network Disruption** such as through ransomware, unless a money demand is paid by the **insured.** An **Extortion Threat** is first discovered by an **Insured** when it is first received by the **Insured**.

**K. Extra Expenses** means reasonable and necessary expenses the **Named Insured** incurs after a **Network Disruption** to reduce the **Named Insured's Business Income Loss** and to resume its normal operations.

**Extra Expenses** do not include:

**1.** Any contractual penalties;

**2.** Any costs to update or upgrade the **Named Insured's Computer System** to a level beyond that which existed prior to the **Network Disruption.**

**L. Insured** means:

**1.** All entities identified in the policy Declarations (all of which are referred to as the "**Named Insured**");

**2.** Employees (not including volunteer workers or independent contractors), principals, partners, executive officers or directors of the **Named Insured**, but solely while acting within their capacity and the scope of their duties for or on behalf of the **Named Insured;**

**3.** In the event of death, incapacity, bankruptcy or insolvency of any person identified in sub-paragraph "2" above, such person's heirs, estate, executors, administrators and legal representative in his or her capacity as such.

**M. Malicious Code** means an unauthorized, unwanted, or harmful program, code, or script, including, but not limited to, any virus, Trojan horse, worm, time, logic bomb, spyware, and malware or spider ware.

**N. Media Wrongful Act** means any of the following actual or alleged unintentional and unknowing conduct by **you** directly relating to, in connection with or arising from the creation of **Electronic Media** which advertises or promotes the **Named Insured's** products or services:

**1.** Libel, slander or other defamation;

**2.** Invasion or infringement of an individual's right to privacy or publicity;

**3.** Disparaging a person's or organization's goods, products or services;



4. Infringement of copyright, plagiarism or misappropriation of ideas; or

5. Infringement of trademark, title, slogan, trade name, trade dress, service mark or service name.

O. **Named Malicious Code** means an **Attack** caused by a **Malicious Code** or variant thereof that is identified or assigned a name by any United States government entity or a computer security or forensics entity, or anti-virus software vendor, including but not limited to CrowdStrike, Juniper Networks, Mandiant/FireEye, McAfee, Palo Alto Networks, RSA, Seculert/Radware, Symantec, or Verizon.

P. **Network Disruption** means a measurable interruption, failure, suspension, or delay in the performance of the **Named Insured's Computer System** directly caused by **your** unintentional failure to prevent an **Unauthorized Access or Unauthorized Use** of, the introduction of **Malicious Code** into, or a denial of service attack upon, such **Computer System**.

Q. **Network Security Wrongful Act** means **your** unintentional and unknowing failure to prevent an **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** that directly results in:

1. The inability of an **Insured** or authorized third party user to access the **Named Insured's Computer System**;

2. The inability of an authorized third party user to access its computer system or network;

3. The failure or corruption of a third party's computer system or network;

4. **Your** transmittal or distribution of **Malicious Code** to a third party's computer system or network;

5. The perpetuation of a denial of service attack on a third party's computer system or network.

R. **PCI Fine Assessment** means the assessment of or threat to assess **PCI Fines** by any bank or a payment card association due to the **Named Insured's** violation of any Payment Card Industry Data Security Standards. A **PCI Fine Assessment** is first discovered by the **Named Insured** when **you** first discovered the directly related **Privacy Breach Event** out of which the **PCI Fine Assessment** arises.

S. **PCI Fines** means all fines the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of any Payment Card Industry Data Security Standards that were in effect when you first discovered the directly related **Privacy Breach Event**.

T. **Privacy Breach Event** means the theft or unauthorized disclosure of **Protected Information** due to the **Insured's** unintentional failure to

safeguard such **Protected Information.**

U. **Privacy Breach Expenses** mean the following amounts, if reasonable and necessary and directly incurred by or for the **Named Insured** in responding to a **Privacy Breach Event** or **System Compromise** or, solely with respect to an **Extortion Threat**, a **Network Disruption**:

1. **Notification Expenses:**

   Notification fees and expenses charged by a vendor designated or approved in writing by **us** to notify a **Protected Person** of an **Unauthorized Access or Unauthorized Use** of his or her **Protected Information**, pursuant to applicable **Privacy Law** requirements or to minimize **Damages** otherwise covered under this Endorsement;

2. **Monitoring Expenses:**

   Fees and expenses charged by a vendor designated or approved in writing by **us** to provide monitoring, identity theft, or fraud resolution services to a **Protected Person** affected by a **Privacy Breach Event**, pursuant to applicable **Privacy Law** requirements or to minimize **Damages** otherwise covered under this Endorsement;

3. **Extortion Threat Expenses:**

   Expenses, ransom money including interest on any loan necessary to pay a ransom or reward money paid to any informant, if approved in writing by **us** to prevent or mitigate an **Extortion Threat**;

4. **Data Replacement Expenses:**

   The reasonable and necessary fees, costs and expenses charged by a vendor designated or approved in writing by **us** to research, re-create or replace, from written records or partially or fully matching electronic data, any electronic data on the **Named Insured's Computer** damaged by a **System Compromise**;

5. **System Restoration Expenses:**

   The reasonable and necessary fees and costs of a professional services firm we approve to restore the **Named Insured's Computer System**, if damaged by a **System Compromise**, to its operating performance immediately before the **System Compromise**, including costs to reinstall or replace software and remove **Malicious Code**;

6. **Cyber Investigation Expenses:**

   Fees and expenses charged by a vendor designated or approved in writing by **us** to investigate the **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** from which **Protected Information** has been accessed in order to determine whether the **Named Insured** has an obligation to provide notice under **Privacy Law**; and

Exhibit B

**7. Crisis Management Expenses:**

   **a.** Fees and expenses charged by a public relations firm, law firm or crisis management firm to perform crisis management services to minimize the potential harm to the **Named Insured's** business from a **Privacy Breach Event**; and

   **b.** Fees and expenses charged by a call center designated or approved in writing by us to provide assistance managing incoming calls in high volume **Privacy Breach Events**.

**Privacy Breach Expenses** shall not include:

**1.** Salaries, wages, fees, remuneration, overhead, benefits or expenses of **our** or **your** employees or officials;

**2.** Fees, costs or expenses to restore, replace, remediate, repair, correct, enhance, upgrade or otherwise modify, improve or make changes to the **Named Insured's Computer System** following or as a result of an actual or attempted **Unauthorized Access or Unauthorized Use** or **Privacy Breach Event**, including fees, costs or expenses to prevent a future **Unauthorized Access or Unauthorized Use** or **Privacy Breach Event**.

**V. Privacy Law** means any law or regulation applicable to persons and organizations who lawfully and permissibly obtain or possess a **Protected Person's Protected Information** requiring the posting of privacy policies, the adoption of specific privacy or security controls, or the notification of **Protected Persons** in the event their **Protected Information** has potentially been accessed or disclosed without authorization.

**W. Privacy Wrongful Act** means the following unintentional conduct resulting from your unintentional failure to safeguard **Protected Information** in the **Named Insured's** possession in the normal course of business:

**1. Your** actual or alleged violation of a **Privacy Law**; or

**2. Your** actual or alleged invasion or infringement of an individual's right to privacy or publicity.

**X. Protected Information** is defined as any personal information of an individual as defined in **Privacy Law**.

**Y. Protected Person** means a person whose **Protected Information** is protected from unauthorized disclosure or access by a **Privacy Law**.

**Z. Reconstruction Period** means the period of time:

**1.** After the application of the waiting period deductible stated in the Schedule;

**2.** Immediately following a **Network Disruption**; and

**3.** Ending at the earlier of 120 days after the time that the **Named Insured's Computer System**

was first interrupted by the **Network Disruption** or the resumption of the **Named Insured's** operations to substantially the same level that existed had the **Network Disruption** not taken place provided, however, that the **Named Insured** must make every effort to resume all or part of its operations as quickly as possible.

**AA. Regulatory Fines** means any fines or penalties assessed against a **Named Insured** as a result of a **Regulatory Proceeding**, provided such fines or penalties are insurable under the applicable law most favoring coverage for such fines or penalties.

**BB. Regulatory Proceeding** means a formal request to **you** for documentation made by, or an investigation or civil proceeding brought by, a regulatory body or regulator directly arising from **your** actual or alleged unintentional breach or violation of a **Privacy Law**.

**CC. Related Claims** means **Claims** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar facts, circumstances, subjects, situations, decisions, cause, persons, transactions, events, class of persons or events, or continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

**DD. Related Events** means **Privacy Breach Events, System Compromises** or **Extortion Threats** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar facts, circumstances, subjects, situations, decisions, cause, persons, transactions, event, class of persons or events, or continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

**EE. System Compromise** means any **Unauthorized Access or Unauthorized Use** of the **Named Insured's Computer System** that materially degraded or damaged the performance of the **Named Insured's Computer System** or corrupted or destroyed any electronic data in the **Named Insured's Computer System**.

**FF. Unauthorized Access or Unauthorized Use** means:

   **1.** Access to or use of the **Named Insured's Computer System** by a person or organization not authorized to do so, or the access to or use of the **Named Insured's Computer System** by an authorized person in an unauthorized manner.

   **2.** A **Malware Attack** or unauthorized intrusion which results in access to or use of the **Named Insured's Computer System**.

Exhibit B

**GG.Wrongful Act** means a **Media Wrongful Act, Network Security Wrongful Act**, or **Privacy Wrongful Act**.

## SECTION III – EXCLUSIONS

**A. We** shall not be liable to pay, indemnify or reimburse **Damages** or **Claim Expenses** or **Regulatory Fines** from any **Claim** or **Regulatory Proceeding**, or any **Privacy Breach Expenses, Business Income Loss** or **Extra Expenses**, based on, resulting from or arising out of:

1. Any actual or alleged direct creation of **Malicious Code** by **you**.

2. Any **Attack** into or of the **Named Insured's Computer System** unless such attack is determined to be an **Exploit** unique to the **Named Insured's Computer System** and specifically-targeted-at-and-specifically directed against the **Named Insured**.

3. **Named Malicious Code**.

4. The unsolicited dissemination of any communication to actual or prospective customers of the **Insured** or any third party, or any actual or alleged violation of the Telecommunications Act, the CAN-SPAM Act, or any other federal, state or local legislation, regulation or law protecting a person's or entity's right of seclusion or privacy.

5. Any seizure, nationalization, confiscation, destruction, deletion or expropriation of any **Protected Information** or any **Computer System** held or used by **you** by order of any governmental authority.

6. Any costs or expenses incurred by **you** or others to inspect, investigate, withdraw, alter, recall, reprocess, restore, replace, retract, amend, reprint, reproduce, remediate, correct, enhance, upgrade or otherwise modify any product, service or media of or for **you**, or any part of any such product, service or media. However, this exclusion shall not apply to any **Data Replacement Expenses** or **System Restoration Expenses** that constitute **Privacy Breach Expenses**, if the **Data Replacement Expenses** or **System Restoration Expenses** otherwise are covered.

7. Any actual or alleged unlawful or unauthorized obtaining, gathering, collecting, acquiring, using, distribution or sale by **you** of any information of any type, nature, or kind, including **Protected Information**.

8. Any actual or alleged:

   a. Dishonest, fraudulent, criminal or malicious act, error or omission by **you**; or

   b. **Your** intentional or knowing **Unauthorized Access or Unauthorized Use**, tampering with, denial of service attack, or otherwise limiting or preventing the use of the **Named Insured's Computer System** or any third party's computer system or network;

Provided, however, the above sub-parts shall not apply:

   i. To any **Insured** who did not intentionally and knowingly commit, acquiesce or participate in the conduct that gave rise to the **Claim** or **Privacy Breach Event**;

   ii. In the absence of a final judgment, adjudication or binding arbitration ruling adverse to such **Insured**.

Upon such final adverse judgment, adjudication, or final arbitration ruling, the **Insured** shall reimburse us for all **Damages, Privacy Breach Expenses**, and **Claim Expenses we** have incurred or paid.

9. Any actual electrical or mechanical failures, including power interruption, surge, brownout or blackout, or defect of telephone, telecommunications, or data transmission lines, services, equipment, or infrastructure.

10. Any Internet System failure, Internet Service failure, Internet Service Provider failure, or failure of any device or system that is not owned or leased by **you** and is operated under **your** control.

11. Any failure or interruption of service of a cloud provider or other entity providing hardware or software services to **you** over the Internet, including the provision of software as a service, infrastructure as a service, platform as a service, or data storage as a service, except that this exclusion shall not apply to entities hosting hardware or software that **you** own, lease, or control.

12. Any actual or alleged patent infringement or theft, copying, misappropriation, display, or publication of any patent, process, confidential or proprietary information, or trade secret.

13. The outsourcing of data processing and other business functions to a location outside the United States, Canada, or European Union when the outsourced activity involves **Protected Information** in **your** care, custody, or control. However, this exclusion does not apply as respects Cloud based storage.

14. Any actual or alleged gaining in fact of any profit or advantage to which **you** are not legally entitled.

15. Any actual or alleged:

    a. Bodily injury, sickness, disease or death of any person;

    b. Physical injury to, or loss or destruction of, tangible property, including the loss of use thereof, or loss of use of tangible property which has not been physically injured, lost, damaged or destroyed;

    Provided, however, this exclusion shall not apply to a **Claim** for mental injury, mental anguish, or emotional distress directly resulting

**Exhibit B**

from a **Privacy Wrongful Act** or a **Media Wrongful Act**.

16. Any actual or alleged breach of contract, agreement, understanding, warranty including but not limited to product warranty, or other guarantee or promise; provided, however;

  a. With respect to breach of contract only, this exclusion shall not apply to any liability that would have attached to you in the absence of such contract;

  b. This exclusion shall not apply to fines the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of Payment Card Industry Data Security Standards (PCI-DSS).

17. Any liability or obligation assumed by **you** under any contract, agreement, understanding, warranty including but not limited to product warranty, or other guarantee or promise; provided, however, that this exclusion shall not apply to:

  a. Liability that would have attached to you in the absence of any such contract, agreement, understanding, warranty or other guarantee or promise: or

  b. Fines the **Named Insured** is obligated under contract to pay to its acquiring bank or a payment card association due to the **Named Insured's** violation of Payment Card Industry Data Security Standards (PCI-DSS).

18. Any fact, circumstance, subject, decision, transaction, event or situation:

  a. Which was the subject of notice prior to the inception of this Endorsement to any other insurance carrier under any other policy;

  b. Which any principal, partner, or executive officer of the **Named Insured** was aware prior to the Effective Date of this Endorsement issued by **Us** that such fact, circumstance, subject, decision, transaction, event or situation could reasonably have been expected to give rise to a **Claim, Regulatory Proceeding, Privacy Breach Event** or **Network Disruption**.

19. Any litigation, proceeding or investigation prior to or pending on the Effective Date of this Endorsement, or any **Claim, Regulatory Proceeding, Privacy Breach Event, Related Event, Related Claim**, fact, circumstance, subject, decision, transaction, event, situation, cause, proceeding or investigation underlying or alleged therein.

20. Any actual or alleged:

  a. Discrimination of any kind;

  b. Wrongful employment practice of any kind.

21. Any actual or alleged:

  a. Antitrust, restraint of trade, unfair, false or deceptive trade practice, or violation of any federal, state, local or foreign legislation, regulation or law prohibiting any antitrust activity, price fixing, price discrimination, monopoly or monopolization, predatory pricing, unfair competition, collusion, conspiracy or unfair, false, misleading or deceptive trade or business practice, advertising or promotion;

  b. False, misleading, deceptive, or fraudulent statement or representation advertising or promoting the products, services, or business of the **Insured**.

22. Any actual or alleged violation of any federal, state, local, or foreign securities-related legislation, regulation, or law.

23. Any:

  a. Nuclear reaction, nuclear radiation, radioactive contamination, radioactive substance, electromagnetic field, electromagnetic radiation, or electromagnetism.

  b. War, invasion, acts of foreign enemies, hostilities (whether war is declared or not), rebellion, revolution, insurrection, war-like action, coup, usurped powers or military power.

  c. Fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, act of God or other physical event.

24. The violation of any United States economic or trade sanction.

25. The presence, discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, oil or other petroleum substances or derivatives, waste materials or other irritants, contaminants, pollutants or any other substances, including asbestos, fungus, mold and lead, which are or may be injurious to public health, property or the environment ("hazardous substances"), including:

  a. The cost of cleanup or removal of hazardous substances;

  b. The cost of such actions as may be necessary to monitor, assess and evaluate, the presence, discharge, dispersal, escape, release, or threat of same, of hazardous substances;

  c. The cost of disposal of hazardous substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize, or mitigate damage to the public health or welfare or to property or the environment,

Exhibit B

which may otherwise result; or

d. Any cost, based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way any government direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize hazardous substances.

B. **We** shall not be liable to pay **Damages** or **Claim Expenses** or **Regulatory Fines** from:

1. Any **Claim** against **you** that is brought by or on behalf of:

   a. Any other **Insured**, other than a **Claim** by an employee of the **Named Insured** for a **Privacy Wrongful Act**;

   b. Any entity which is owned or controlled by, is under common ownership or control with, any **Insured**;

   c. Any person or entity which owns or controls any **Named Insured**;

   d. Any entity of which any **Insured** is a director, officer, partner or principal shareholder; or

   e. Any independent contractor of an **Insured**.

2. Any **Claim** against **you** that is brought by or on behalf of any federal, state, local or foreign administrative, governmental, or regulatory agency, tribunal, body or similar or equivalent entity; however, this exclusion shall not apply if a **Claim** is brought by any such entity as a client and the **Claim** is for a **Wrongful Act** in connection with the client relationship between such entity and the **Named Insured**; or

3. Any **Claim** based on, resulting from or arising out of any **Media Wrongful Act** committed or which took place in whole or in part before the inception date of the earliest policy issued to the **Named Insured** that offered on a continuous basis the same or substantially equivalent coverage as the relevant coverage provided under this Endorsement;

4. Any **Claim** or **Regulatory Proceeding** based on, resulting from, arising out of or related to a **Privacy Breach Event**:

   a. That was not timely reported to **us** under "Section V. CONDITION B."; or

   b. That was not first discovered by **you** during the **Endorsement Period** or, if this Endorsement was not renewed, within thirty (30) days after the end of the **Endorsement Period**; or

5. Any **Claim** against **you** or brought by any insurer who may be liable under, any Workers' Compensation, Unemployment Compensation, Disability Benefits Law, the Employee Retirement Income Security Act of 1974, as amended, or any similar federal, state, local or foreign legislation, regulation or law.

## SECTION IV – LIMITS OF INSURANCE AND DEDUCTIBLE

A. The Third Party Cyber Liability Coverage Limit of Insurance specified in "A" of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Damages** and **Claim Expenses** from each **Claim** or **Related Claims** and all **Claims** or **Related Claims** under this Endorsement, as detailed in Insuring Agreement "A.1".

The Third Party Cyber Liability Coverage Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

B. The **Regulatory Proceeding** Coverage Limit of Insurance specified in "B" of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Claim Expenses** and **Regulatory Fines** from each **Regulatory Proceeding** and all **Regulatory Proceedings** under this Endorsement, as detailed in Insuring Agreement "A.2." The **Regulatory Proceeding** Coverage Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

C. The First Party **Privacy Breach Expense** Coverage Limit of Insurance specified in "C" of the Schedule and the rules detailed below fix the maximum amount **we** are obligated to pay for all **Privacy Breach Expenses** from each **Privacy Breach Event, System Compromise, Extortion Threat,** or **Related Events** under this Endorsement, as detailed in Insuring Agreement "A.3."

The **Privacy Breach Expense** Coverage Limit of Insurance shall be part of, and not in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

D. First Party Business Interruption Coverage Aggregate Limit of Insurance specified in "D" of the Schedule and the rules detailed below fix the maximum amount **we** are to pay for all **Business Income Loss** and **Extra Expense** from all **Network Disruptions** under this Endorsement, as detailed in Insuring Agreement "A.4". The First Party **Business Income Loss** and **Extra Expense** Aggregate Limit of Insurance shall be part of, and in addition to, the Cyber Coverage Aggregate Limit of Insurance specified in the Schedule.

E. The Cyber Coverage Aggregate Limit of Insurance specified in "E" of the Schedule shall fix the maximum amount **we** shall pay for all **Damages** and **Claim Expenses** from all **Claims**, all **Claim Expenses** and **Regulatory Fines** from all **Regulatory Proceedings**, all **Privacy Breach Expenses** from all **Privacy Breach Events**, all **System Compromises** and all **Extortion Threats**, all **Business Income Loss** and **Extra Expense** from all **Network Disruptions** and all **Related Claims** and **Related Events** covered under this Endorsement.

**F.** If any Limit of Insurance is exhausted, the premium for this Endorsement shall be deemed fully earned.

**G. Deductible**

For any **Claim, Regulatory Proceeding Privacy Breach Event, System Compromise,** or **Extortion Threat we** shall be liable for only the amount of the **Claim Expenses, Damages,** and **Privacy Breach Expenses** from such **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise,** or **Extortion Threat** exceeding the Deductible amount specified in the Schedule. **We** have no obligation, either to **you** or to any person or entity, to pay all or any portion of any Deductible amount for or on **your** behalf. Solely for the purpose of applying the Deductible, a single Deductible amount applies to all **Regulatory Proceedings, Related Claims, Related Events** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar thefts or unauthorized disclosures of **Protected Information.**

## SECTION V – CONDITIONS

**A. You** agree to use due diligence to prevent and mitigate any **Privacy Breach Event, Network Disruption, System Compromise, Extortion Threat,** or **Regulatory Proceeding** or **Claim.** This includes, but is not limited to, complying with reasonable protocols for the following:

**1.** Providing and maintaining physical security for **your** premises, as well as your **Computer System;**

**2.** Providing and maintaining appropriate network security for **your Computer System;**

**3.** Providing and maintaining appropriate back-ups, firewalls, and virus scans;

**4.** Providing and maintaining encryption for transactions such as Credit Card, Debit Card, and Check Processing; and

**5.** Providing and maintaining appropriate disposal of files containing **Protected Information** no longer needed for use.

**B. RELATED CLAIMS, RELATED EVENTS AND REGULATORY PROCEEDINGS**

**1.** All **Related Claims,** whenever discovered, shall be deemed to be a single **Claim,** regardless of

**a.** The number of **Related Claims;**

**b.** The number or identity of claimants;

**c.** The number or identity of **Insureds** involved;

**d.** Whether the **Related Claims** are asserted in a class action or otherwise; or

**e.** The number and timing of the **Related Claims,** even if the **Related Claims** comprising such single **Claim** were received or discovered in more than one

**Endorsement Period.**

**f.** Notice given by or on behalf of the **Insured** to **our** authorized agent, with particulars sufficient to identify the **Insured,** shall be considered notice to **us.**

**g.** Subject to the discovery requirements under all coverages provided by this **Endorsement,** failure to give any notice required by this condition within the time period specified shall not invalidate any claim made by **you** if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

All **Related Claims** shall be treated as a single **Claim** discovered when the earliest of such **Related Claims** was first discovered, or when the earliest of such **Related Claims** is treated as having been first discovered under Condition B. below, whichever is the earliest date.

**2.** All **Related Events,** whenever occurring, shall be deemed to be a single **Privacy Breach Event,** regardless of

**a.** The number of **Related Events;**

**b.** The number or identity of **Insureds** involved;

**c.** The number and timing of the **Related Events,** even if the **Related Events** comprising such single **Privacy Breach Event** occurred in more than one **Endorsement Period.**

All **Related Events** shall be treated as a single **Privacy Breach Event** or **Extortion Threat** first discovered when the earliest of such **Related Events** was first discovered.

**3.** All **Regulatory Proceedings** and **Related Claims** based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related, or substantially similar thefts or unauthorized disclosures of **Protected Information** shall be deemed first discovered when the earliest of such **Related Claims** or **Regulatory Proceedings** was first discovered, or when the earliest of such **Related Claims** or **Regulatory Proceedings** is treated as having been first discovered under Condition B. below, whichever is the earliest date.

**C. NOTICE OF PRIVACY BREACH EVENTS, NETWORK DISRUPTIONS, SYSTEM COMPROMISES, EXTORTION THREATS, REGULATORY PROCEEDINGS AND CLAIMS**

**1. You** shall report to **us** a **Privacy Breach Event, System Compromise, Extortion Threat,** or **Network Disruption** for which coverage is being sought under this

Exhibit B

Endorsement immediately, but in no event later than thirty (30) days after **you** first discovered such **Privacy Breach Event, System Compromise, Extortion Threat** or **Network Disruption**. Such reporting must include full particulars. Any subsequent **PCI Fine Assessment**, Claim for a **Privacy Wrongful Act** or **Regulatory Proceeding** directly related to such **Privacy Breach Event** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered at the time **you** first discovered such **Privacy Breach Event.**

2. The **Named Insured** must give **us** written notice of any **Claim** or **Regulatory Proceeding** as soon as practicable, but in no event later than thirty (30) days after **you** first receive such **Claim** or **Regulatory Proceeding**. If the **Claim** is for a **Media Wrongful Act** or **Network Security Wrongful Act**, the date **you** first received such **Claim** shall be deemed the date **you** first discovered such **Claim**.

3. If, during the **Endorsement Period**, you become aware of any **Wrongful Act** or circumstance which could reasonably be expected to give rise to a **Claim, Regulatory Proceeding** or **Privacy Breach Event**, the **Named Insured** must provide written notice thereof to **us** as soon as practicable, but in no event later than the end of the **Endorsement Period**. The notice shall contain full particulars, including but not limited to:

   a. The names of the potential claimant and the **Insureds** involved and a time, date, location and description of the specific **Wrongful Act** which forms the basis of the potential **Claim** or **Regulatory Proceeding**;

   b. The nature of the potential **Damages** arising from such specific **Wrongful Act**;

   c. A description of the circumstance or **Wrongful Act** and how **you** first became aware of the **Wrongful Act** or potential **Privacy Breach Event**; and

   d. The reason **you** reasonably believe such **Wrongful Act** or circumstance is likely to result in a **Claim, Regulatory Proceeding**, or **Privacy Breach Event**.

   Any **Claim** for a **Media Wrongful Act** or **Network Security Wrongful Act** arising out of such reported **Wrongful Act** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered when such written notice was delivered to us.

   Any **Claim** for a **Privacy Wrongful Act** or **Regulatory Proceeding** arising out of such reported **Wrongful Act** shall be treated as a **Claim** or **Regulatory Proceeding** first discovered at the earlier of:

   e. The date when such written notice was

   f. The date **you** first discovered a **Privacy Breach Event** which a **Claim** or **Regulatory Proceeding** is directly related, provided **you** reported such **Privacy Breach Event** to **us** in accordance with "Condition B.1" above.

4. Insured's Duties in the Event of a **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise, Extortion Threat** or **Network Disruption**.

   a. If there is a **Claim, Regulatory Proceeding, Privacy Breach Event, Extortion Threat** or **Network Disruption, you** must also do the following:

      i. Fully assist and cooperate with **us** in the conduct, defense, investigation, negotiation, and settlement of any **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise, Extortion Threat**, or **Network Disruption**. At **our** request, **you** must: submit to an examination under oath; provide us with written statements; attend meetings and negotiations; produce and make available all information, books, records, documents and other materials which we deem relevant to the **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise, Extortion Threat** or **Network Disruption** or coverage therefor; attend hearings, depositions, proceedings, trials and appeals; assist **us** in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses, and pursuing or enforcing any right of contribution or indemnity against a person or entity who may be liable to you.

      ii. **You** must do whatever is necessary to secure and affect any rights of indemnity, contribution, or apportionment that **you** may have.

      iii. **You** shall accept our assignment of counsel and shall refrain from discussing any **Claim, Regulatory Proceeding, Privacy Breach Event, System Compromise, Extortion Threat** or **Network Disruption** with anyone other than counsel retained to represent the **Insured** or our representatives.

      iv. With respect to a **Privacy Breach Event, System Compromise** or **Extortion Threat**, you must take all reasonable steps to protect **Computer Systems** and **Protected Information** from further loss or damage, and keep a record of the expenses necessary to protect such **Computer Systems** and **Protected Information**.

Exhibit B

**v.** With respect to a **Network Disruption**, **you** must take all reasonable steps and measures to limit or mitigate the **Business Income Loss** and the incurrence of **Extra Expenses**.

**b.** Within six (6) months after the discovery of any **Network Disruption**, the **Named Insured** must furnish **us** with written proof of the **Named Insured's** claimed loss, duly sworn to, with full particulars.

**c.** No **Insured** will, except at its own cost, voluntarily make a payment, admit liability, retain attorneys, consultants, or vendors, assume any other obligation, or accept or reject arbitration without our prior written consent. Any payments, settlements, or admissions **you** make without **our** prior written consent will be made at **your** own expense.

## D. VALUATION OF BUSINESS INCOME LOSS

**Business Income Loss** will be calculated on an hourly basis based on the actual **Business Income Loss** the **Named Insured** sustains during the time period in which the **Named Insured's Computer System** is affected by the **Network Disruption**. In determining the amount of net profit or loss and expenses covered for the purpose of ascertaining the amount of **Business Income Loss**, **we** will give due consideration to the net profit or loss of the **Named Insured** before the **Network Disruption** occurred and the probable net profit or loss of the **Named Insured** if no **Network Disruption** had occurred. However, such net profit or loss calculations shall not include, and no coverage shall be provided for, net income that would likely have been earned as a result of an increase in the volume of the **Named Insured's** business due to favorable business conditions caused by the impact of any internet, computer, or network disruption suffered by other businesses.

## E. BANKRUPTCY

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve us of any of **our** obligations under this Endorsement.

## F. ACTION AGAINST US

No action shall be brought against **us** by any **Insured**, unless, as a condition precedent thereto:

**1.** all **Insureds** have fully complied with all the terms and conditions of this Endorsement; and

**2.** with respect to a **Claim**, the amount of **Damages** has been fixed or rendered certain:

    **a.** By final judgment against the **Insured** after trial of the issues; and

    **b.** The time to appeal such judgment has expired without an appeal being taken; and

    **c.** If appeal is taken, after the appeal has been determined; and

    **d.** The **Claim** is settled in accordance with the terms and conditions of this Endorsement.

No individual or entity shall have any right under this Endorsement to join **us** as a party to any **Claim** to determine the liability of any **insured**; nor shall **we** be impleaded by **you** or **your** legal representative in any such **Claim**.

In no event shall any action brought by anyone be maintained against **us** unless such action is brought within thirty-six (36) months from the time the right to bring action first became available. With respect to a **Network Disruption**, no legal proceedings for the recovery of any **Business Income Loss** or **Extra Expense** may be brought prior to the expiration of sixty (60) days after the **Named Insured's** original proof of loss is submitted to **us**.

## G. ASSIGNMENT OF THE INSURED'S INTEREST

The interest of the **Insured** under this Endorsement is not assignable to any other person or organization, except with **our** prior written consent.

## H. TRANSFER OF RIGHTS OF RECOVERY /SUBROGATION

If there is a payment made by **us**, **we** shall be subrogated to all of **your** rights of recovery against any person or organization. **You** will cooperate with **us** and do whatever is necessary to secure and recover upon these rights, including but not limited to executing any documents necessary to enable **us** to effectively bring suit in **your** name. **You** shall do nothing that may prejudice **our** position or potential or actual rights of recovery. **Your** rights and obligations hereunder shall survive the expiration, cancellation, or termination of this Endorsement.

With respect to a **Claim**, any amount recovered upon the exercise of such rights of recovery will be applied on the following terms: first, to the repayment of expenses incurred by exercise of such subrogation rights; second, to **Damages** or **Claim Expenses** paid by the **Named Insured** in excess of the Limits of Insurance; third, to **Damages** or **Claim Expenses** paid by **us**; and finally, to **Damages** or **Claim Expenses** paid by the **Named Insured** toward the Deductible.

With respect to any **Privacy Breach Event, System Compromise** or **Network Disruption**, any amount recovered upon the exercise of such rights of recovery will be applied on the following terms: first, to the repayment of expenses incurred by exercise of such subrogation rights; second, to amounts paid by the **Named Insured** in excess of the Limits of Insurance; third, to amounts paid by **us**; and finally, to amounts paid by the **Named Insured** toward the Deductible.

Notwithstanding the foregoing, **we** agree to waive any right of subrogation hereunder against a client of the **Named Insured**, with respect to any payment made in connection with a **Claim** if and to

Exhibit B

to the extent that, prior to the occurrence of any **Wrongful Act** or **Privacy Breach Event** giving rise to such **Claim**, the **Named Insured** had agreed to waive its rights of subrogation against such client pursuant to a prior written contract or agreement.

### I. CANCELLATION

This Endorsement may be canceled or non-renewed as provided in the terms and conditions that apply to the policy or Coverage Part to which it is attached. The **Endorsement Period** will end at the same time and date that any cancellation or nonrenewal of the policy or Coverage Part to which it is attached takes effect.

### J. CHANGES MADE TO THIS ENDORSEMENT

The terms and conditions of this Endorsement cannot be waived or changed except by specific written endorsement issued by us and made part of the Endorsement.

### K. AUDIT

**We** may examine and audit **your** books and records at any time during the **Endorsement Period** and within three (3) years after the expiration or termination date of this Endorsement as far as they relate to this Endorsement.

### L. FALSE OR FRAUDULENT CLAIMS

If an **Insured** reports any matter knowing it to be false or fraudulent, **we** will not be liable to make any payments related to that matter.

### M. TERMS AND CONDITIONS OF ENDORSEMENT CONFORMED TO STATUTS

Where necessary, the terms and conditions of this Endorsement will be amended to conform to applicable law.

### N. PREMIUM

The premium amount for this Endorsement is stated in the Schedule and is for coverage for the **Endorsement Period.** If during the **Endorsement Period** there is a change in coverage afforded, we have the right to adjust the premium as of the date of the change. Any premium adjustment shall be made in accordance with our prevailing rules and rates.

Premium shown as advance premium is a minimum and deposit premium. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable by notice to the first **Named Insured.**

If the premium for this Endorsement is a flat premium, it is not subject to adjustment.

### O. TERRITORY

This Endorsement applies to **Wrongful Acts, Privacy Breach Events** and **Network Disruptions** taking place anywhere in the world except Countries or States against which the United States has implemented trade or diplomatic sanctions. However, any **Claim** or **Regulatory Proceeding** must be brought in the United States.

### P. CHANGE IN RISK

1. If, during the **Endorsement Period**, the **Named Insured** acquires or creates another entity (other than a joint venture or partnership, which is addressed below) whose annual revenues are more than ten percent (10%) of the **Named Insured's** total annual revenues as set forth in the most recent Application for insurance, or if the **Named Insured** merges or consolidates with another entity such that the **Named Insured** is the surviving entity (any such acquired, created, merged or consolidated entity, including a new subsidiary, will be identified as the "Acquired Company"), then for a period of sixty (60) days after the effective date of the transaction, such Acquired Company shall be included as an **Named Insured** but only with respect to **Network Security Wrongful Acts** and **Privacy Wrongful Acts** first committed or allegedly committed after the effective date of such transaction, or **Privacy Breach Events**, **Extortion Threats** or **Network Disruptions** that first occur after the effective date of such transaction. Upon the expiration of the sixty (60) day period, there will be no coverage available under this Endorsement for any **Claim, Regulatory Proceeding, Privacy Breach Event, Extortion Threat** or **Network Disruption** based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly, the Acquired Company unless within such sixty (60) day period:

   a. The **Named Insured** gives **us** such information regarding such transaction as **we** request;

   b. **We** have specifically agreed by written endorsement to this Endorsement to provide coverage with respect to such Acquired Company and the **Named Insured** accepts any terms, conditions, exclusions or limitations, including payment of additional premium, as **we**, in **our** sole discretion, impose in connection with the transaction; and

   c. The **Named Insured** has paid the additional premium, if any, **we** charge and has agreed to any modifications to this Endorsement.

2. If, during the **Endorsement Period**, the **Insured** becomes a member of a new joint venture or partner in a new partnership, there will be no coverage available under this Endorsement for any **Claim, Damages, Claim Expenses, Privacy Breach Event, Extortion Threat, Network Disruption** or **Wrongful Act** based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly, such joint venture or partnership, unless:

Exhibit B

    **a.** The **Named Insured** gives **us** such information regarding the new joint venture or partnership as **we** request; and

    **b.** **We** specifically agree by written endorsement to this Endorsement to provide coverage with respect to such new joint venture or partnership, and the **Named Insured** accepts any terms, conditions, exclusions, or limitations, including payment of additional premium, as **we**, in **our** sole discretion, impose in connection with such transaction.

**3.** If, during the **Endorsement Period**, any of the following events occur:

    **a.** The **Named Insured** first identified in the policy Declarations is dissolved, sold, acquired by, merged into, or consolidated with another entity such that such **Named Insured** is not the surviving entity; or

    **b.** A third party receiver, conservator, trustee, liquidator, rehabilitator or any similar official is appointed for or with respect to the **Named Insured** first identified in the policy Declarations;

coverage under this Endorsement shall continue in full force and effect until the Expiration Date or any earlier cancellation or termination date, but this Endorsement shall only apply to **Wrongful Acts** first committed or allegedly committed before the effective date of such event or a **Privacy Breach Event**, **Extortion Threat** or **Network Disruption** that first occurs before the effective date of such event. There will be no coverage available under this Endorsement based on, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly any **Wrongful Act** committed or allegedly committed on or after the effective date of such event or any **Privacy Breach Event, Extortion Threat** or **Network Disruption** that occurs after the effective date of such event.

**Q. ENTIRE AGREEMENT**

The **Insureds** agree that this Endorsement, including the application, Schedule and any endorsements, constitutes the entire agreement between them and the Company or any of its agents relating to this insurance.

**R. ECONOMIC AND TRADE SANCTIONS OR VIOLATIONS OF LAW**

Any **Claim, Regulatory Proceeding, Privacy Breach Event, Extortion Threat, Network Disruption** or matter uninsurable under any act, statute, rule, regulation, ordinance, common law, or other law of the United States of America concerning trade or economic sanctions or export control laws is not covered under this Endorsement.

Exhibit B

 **Progressive** *SMALL BUSINESS* / by **Homesite**

Progressive Advantage Business Program
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company

**Policy No:** BPP1092982          **Payment Plan:** Monthly - New Business

## CONFIRMATION OF ENROLLMENT IN AUTOMATIC PAYMENTS

Thank you for enrolling in our automatic payment plan for policy number: BPP1092982. You have authorized Progressive Advantage Business Program to deduct payment from your checking or savings account, or to charge your credit or debit card. Your enrollment is complete and we will make payment deductions in the amounts and on the due dates indicated on your billing statement. Refer to your billing statement for a schedule of deductions and any applicable service charges. Note that changes to your policy or premium may change the amount debited. Your authorization shall apply to any renewal, reinstated, or amended policy with Progressive Advantage Business Program unless revoked by you. The charge will appear on your bank or credit card statement as "Midvale Indemnity Company." Note that Progressive Advantage Business Program has the right to discontinue your enrollment at any time. Refunds or credits, if any, may be made directly to your card or account. You can cancel your payment deductions by calling us at 844-306-4926.

Thank you and we appreciate your business.

BID 0019 12 17
Exhibit B

Progressive Advantage Business Program
Underwritten By:
Midvale Indemnity Company
Tel: 844-306-4926
Fax: 866-585-2786

**PROGRESSIVE** SMALL BUSINESS / by **Homesite**

P.O. Box 5316
Binghamton, NY 13902

60259002·NN·RP·22·20220722·NNNNNNNN·0003898·0009

CEDRICK FORREST
100 GLENBOROUGH DR STE 422
HOUSTON, TX 77067-3600

||լլ|լլ·b|·լ||d||·||լ||·|լ|·b|||||||·|լ|·|·լ|·|լ||·|·լ||լ||

Claim Number:      GB-000-016384
Date Of Loss:      10/22/2021
Date Reported:     10/26/2021
Policy Number:     BPP1092982
Policyholder:      Ashley Bonds



July 21, 2022

Dear Cedrick Forrest,

This correspondence is regarding the claim for Internaional Institute of Aesthetic Arts & Beauty LLC.

For purposes of this correspondence, "you" and "your" refers to Internaional Institute of Aesthetic Arts & Beauty LLC.

This letter will acknowledge completion of our investigation into the claim you filed for Theft.

On October 26, 2021 a claim was reported for a theft with a date of loss of October 22, 2021. We spoke with the insured who advised that there were no signs of forced entry. We received a copy of the police report which also details there were not any signs of forced entry. In addition, there have not been any witnesses come forward detailing the theft, there is not any security footage showing the theft, and the Allen Police department have an open investigation into the matter.

We assigned an investigator to further review the claim submitted for theft. On Decemver 23, 2021, during the investigation, neither the Police Department nor the Investiator could find any evidence of any students being enrolled at the Beauty School as stated by Ashley Bonds. In addition, a photo provided of a couch claimed on the inventory of items stolen from the business was not at the business location in the photo. Also an item claimed on the inventory, Norvell Handeld Retail Kit, was found to still be at the insured location when the investigator conducted his inspection.

Please refer to th epolicy language regarding Limitations and Misrepresentation.

SECTION I – PROPERTY
A. Coverage
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
4. Limitations
(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY
AND SECTION II – LIABILITY)
C. Concealment, Misrepresentation Or Fraud
This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:
1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

Based on the policy language referenced above, we must respectfully decline coverage for the alleged theft that occurred at the insured premises.

# Exhibit B

Midvale Indemnity Company specifically reserves its ability to assert any and all rights or defenses available to it under the policy. Nothing in this letter should be construed as a waiver of any such rights or defenses.

If you believe this denial of payment is being made in error, or if you have any information that you feel would warrant a change in this decision, please contact me as soon as possible.

We are required by state law to tell you that pursuant to the terms of your policy and/or applicable state law, legal action must be taken within two years from the date of loss.

Please contact us if you have any questions about this claim. We are glad to help.

Sincerely,

*Petronia Dampier*



Petronia Dampier
Claim Senior Adjuster
AFICS on behalf of Midvale Indemnity Company
Petronia.Dampier@afics.com
Phone: 1-801-559-9254
Fax: 866-585-2786
Mail: P.O. Box 5316, Binghamton, NY 13902

Exhibit B